HARLINGTON WOOD, Jr., Circuit Judge.
 

 Pence’s Garden and Gift Center and Village Pottery in Montpelier, Indiana is at the center of this dispute. Until her September 1987 voluntary chapter 13 bankruptcy petition, Phyllis Pence operated this business as a sole proprietorship.
 

 Every bankruptcy case needs a creditor, and in this case, the creditor is Pacesetter Bank. In 1976, Mrs. Pence, along with her now-deceased husband, had borrowed $45,-000 and $18,512 in separate transactions with Pacesetter Bank. To secure these debts, Pacesetter Bank had received first and second mortgages on the Pences’ business and residential properties, as well as a pledge of all of the Pences’ business inventory, equipment, accounts, and general intangibles. Another bank also has an interest in the debtor’s real property, but this interest is not relevant to our disposition of the case.
 

 Shortly after she filed her chapter 13 petition, Mrs. Pence also filed her proposed reorganization plan. As to Pacesetter’s claim, Mrs. Pence proposed that it receive the “greenhouse property” — the real and personal property that constituted Mrs. Pence’s business. At the time, Pacesetter was owed $47,000, and an appraiser had set the value of the greenhouse property at $58,500. In exchange, the plan provided for Pacesetter to release its mortgage on the debtor’s residence. Pacesetter never objected to this treatment, and the bankruptcy court confirmed the plan. Subsequently, it became clear that the green
 
 *1109
 
 house property was probably worth substantially less than $58,500; a prospective buyer had been willing to pay only $30,000 for the property.
 

 Pacesetter now wants to escape the effects of the chapter 13 plan and has moved for a lifting of the automatic stay and revocation of the confirmation order. Normally, a litigant may accomplish revocation of a confirmation order only through bringing an adversary proceeding in the bankruptcy court,
 
 see
 
 BankR.Rule 7001, but Mrs. Pence expressly waived any objection that she might have to this procedure. There would not be much more to say about this issue were it not for
 
 In re Perkins,
 
 902 F.2d 1254, (7th Cir.1990). In
 
 Perkins,
 
 we vacated the orders of a bankruptcy and district court partly on the grounds that the case should have been brought as an adversary proceeding.
 
 See
 
 902 F.2d at 1257-58. Nevertheless, there is nothing in
 
 Perkins
 
 to suggest an adversary complaint in bankruptcy is a prerequisite to federal court jurisdiction such that a party may not waive its right to object. The creditor in
 
 Perkins
 
 had brought an action against a pension fund to recover property allegedly belonging to the estate, but the pension fund never received notice of the proceedings. The pension fund was not before the bankruptcy court and had no opportunity either to object or to waive its objection about the lack of an adversary complaint.
 

 In this case, Pacesetter did not prevail either before the district or bankruptcy courts and now appeals to this court for relief. The bank’s threshold complaint is that it never received written notice of the confirmation hearing, but the bankruptcy court found this claim not supported by the evidence. We will not disturb this factual finding absent clear error,
 
 In re Harasymiw,
 
 895 F.2d 1170, 1174 (7th Cir.1990);
 
 In re Weber,
 
 892 F.2d 534, 538 (7th Cir.1989), and Pacesetter has not placed evidence in the record to convince us that the bankruptcy court clearly erred. Thus, we could dispose of the notice issue on this basis alone, but even assuming that Pacesetter failed to receive written notice of the confirmation hearing, it is still not entitled to avoid the binding effects of the reorganization plan. Due process does not always require formal, written notice of court proceedings; informal actual notice will suffice. In this case, Pacesetter, a sophisticated and organized creditor, had knowledge of Mrs. Pence’s bankruptcy petition and should have known that a reorganization plan would have to be filed within fifteen days of the petition.
 
 See
 
 BankR. Rule 3015. Creditors, especially lending institutions like Pacesetter, must follow the administration of the bankruptcy estate to determine what aspects of the proceeding they may want to challenge.
 
 See In re Torres,
 
 15 B.R. 794, 797 (Bankr.E.D.N.Y.1981);
 
 see also In re Sam,
 
 894 F.2d 778 (5th Cir.1990) (tort claim barred by bankruptcy discharge where claimant knew of bankruptcy case and could have taken action to protect his rights). Pacesetter was not entitled to stick its head in the sand and pretend it would not lose any rights by not participating in the proceedings.
 

 Pacesetter next argues that ignoring the bankruptcy proceedings and realizing on its collateral is exactly what it is entitled to do under a long line of cases beginning with
 
 Long v. Bullard,
 
 117 U.S. 617, 6 S.Ct. 917, 29 L.Ed. 1004 (1886) and summarized in
 
 In re Tarnow,
 
 749 F.2d 464, 465 (7th Cir.1984). Pacesetter has taken to extreme language in these cases that a secured creditor “may ignore the bankruptcy proceeding and look to the lien for the satisfaction of the debt.”
 
 Tarnow,
 
 749 F.2d at 465. These cases actually stand for nothing more than the proposition, now codified in 11 U.S.C. § 506(d), that unless action is taken to avoid a lien, it passes through a bankruptcy proceeding.
 
 See In re Simmons,
 
 765 F.2d 547, 559 (5th Cir.1985) (“Further, the Seventh Circuit found that Congress’ recent amendment of section 506(d) could only be viewed as codifying,
 
 or recodifying,
 
 the long-established rule of the
 
 Long v. Bullard
 
 line of cases that a secured creditor need not participate in a bankruptcy proceeding to preserve his lien.”) (footnotes omitted & emphasis in original).
 

 
 *1110
 
 Therefore, unless the bankruptcy proceeding avoided it, Pacesetter’s lien on Mrs. Pence’s residence should remain intact. In this case, the chapter 13 plan purported to avoid Pacesetter’s lien on Mrs. Pence’s residence in exchange for other property, but Pacesetter refers us to cases where courts have refused to allow a reorganization plan to alter the rights of a lienholder.
 
 See, e.g., In re Thomas,
 
 883 F.2d 991 (11th Cir.1989),
 
 petition for cert. filed,
 
 No. 89-7358 (U.S. Dec. 27, 1989);
 
 In re Simmons,
 
 765 F.2d 547 (5th Cir.1985);
 
 In re Levine,
 
 45 B.R. 333 (N.D.Ill.1984);
 
 In re Hydom,
 
 94 B.R. 608 (Bankr.W.D.Mo.1988);
 
 In re Honaker,
 
 4 B.R. 415 (Bankr.E.D.Mich.1980). Mrs. Pence asserts that the logic of these cases is misguided. Instead, she invites us to follow
 
 In re Thomas,
 
 85 B.R. 608 (Bankr.N.D.Ala.),
 
 rev’d,
 
 91 B.R. 117 (N.D.Ala.1988),
 
 aff'd,
 
 883 F.2d 991 (11th Cir.1989),
 
 petition for cert. filed,
 
 No. 89-7358 (U.S. Dec. 27, 1989), and
 
 In re Gleason,
 
 89 B.R. 177 (Bankr.N.D.Ala.),
 
 rev’d,
 
 95 Bankr. 801 (N.D.Ala.1988), and hold that whenever the bankruptcy court has confirmed a chapter 13 plan, its provisions are always binding on a secured creditor’s lien. We need not go that far. In the cases where the courts have allowed a lien to survive bankruptcy proceedings despite provisions in a reorganization plan to the contrary, the plan did not allow for any payment of the secured claim — typically where the secured creditor did not file a proof of claim and the plan provided only for the payment of “allowed secured claims.”
 
 See, e.g., Thomas,
 
 883 F.2d at 993;
 
 Levine,
 
 45 B.R. at 335;
 
 see also
 
 11 U.S.C. § 506(d)(2) (failure of secured creditor to file a proof of claim is not grounds to avoid the secured creditor’s lien). It is a very different matter where the plan treats the secured claim in a fair and equitable manner, providing for full payment of the debt.
 
 See In re Toth,
 
 61 B.R. 160, 170 (Bankr.N.D.Ill.1986);
 
 In re Willey,
 
 24 Bankr. 369, 372 (Bankr.E.D.Mich.1982). As one of this nation’s greatest attorneys observed, “Judicial decisions are of greater or less authority as precedents, according to circumstances. That this should be so, accords both with common sense, and the customary understanding of the legal profession.”
 
 [1]
 
 The circumstances of Pacesetter’s case are far different than the circumstances of other creditors in the cases cited to us. Under 11 U.S.C. § 1327(a), Pacesetter is bound by the provisions in Mrs. Pence’s chapter 13 plan because that plan provides for full payment of Pacesetter’s claim in exchange for a release of the lien on her personal residence.
 

 In effect, Pacesetter is now trying to challenge the valuation given to its collateral in Mrs. Pence’s chapter 13 plan. To cancel a $47,000 debt, the proposed plan gave Pacesetter property an appraiser had valued at $58,500, and Mrs. Pence had no obligation to make an issue out of the valuation of Pacesetter’s collateral before proposing her plan.
 
 See In re Calvert,
 
 99 B.R. 80, 82 (N.D.Ala.1988);
 
 In re Chattanooga Wholesale Antiques, Inc.,
 
 78 B.R. 162, 164 (Bankr.E.D.Tenn.1987). The appraisal turned out to be an inflated estimate of the collateral’s value, and instead of attacking the valuation head-on at the confirmation hearing, Pacesetter has chosen a collateral attack on the confirmation order where valuation may not be contested,
 
 see
 
 11 U.S.C. § 1330(a) (listing fraud as the only basis for revocation of confirmation). Much like the mortgagee in
 
 Toth,
 
 Pacesetter must live with its procedural choice.
 
 See
 
 61 B.R. at 170.
 

 As its final argument, Pacesetter urges us to revoke confirmation of the plan on the grounds it was fraudulently obtained. While this would be grounds for revocation of the plan,
 
 see
 
 11 U.S.C. § 1330(a), we have held that it requires a showing of fraudulent intent.
 
 In re Longardner & Assocs., Inc.,
 
 855 F.2d 455, 461 (7th Cir.1988),
 
 cert. denied,
 
 — U.S. -, 109 S.Ct. 1130, 103 L.Ed.2d 191 (1989). As evidence of fraudulent intent, Pacesetter argues that Mrs. Pence drained the value of her business by selling inventory after the appraisal and then advanced a plan
 
 *1111
 
 settling Pacesetter’s claim based on this dubious value. Nevertheless, the bankruptcy court found that Mrs. Pence did not have any fraudulent intent when she presented her plan, and this finding is not clearly erroneous. Mrs. Pence based her valuation of the greenhouse property on an appraisal, which by its nature is only an estimate of value. Just because the estimate turned out to be a poor one does not mean that Mrs. Pence had an intent to deceive.
 

 Asserting that Pacesetter’s appeal was frivolous, Mrs. Pence has moved for an award of attorneys' fees under Fed.R. App.P. 38. Specifically, Mrs. Pence argues that our decision in
 
 Longardner
 
 is disposi-tive of this case, and Pacesetter should have never brought this appeal. While
 
 Longardner
 
 certainly supports Mrs. Pence’s position, its facts and holding do not control the outcome of this case. We see no merit in Pacesetter’s appeal, but we also do not believe that it was frivolous. Mrs. Pence’s motion for attorneys’ fees is denied, but she is entitled to recover costs as the prevailing party in the appeal. The district court’s judgment affirming the bankruptcy court is itself
 

 AFFIRMED.
 

 [1]
 

 . A. Lincoln, Speech on the Dred Scott Decision at Springfield, Illinois (June 26, 1857),
 
 reprinted in
 
 Abraham Lincoln-Speeches and Writings (1832— 1858), at 390, 393 (D. Fehrenbacher ed. 1989).