**ONTRA, INCORPORATED, Appellant,**

v.

**Roy V. WOLFE, III, Trustee, Appellee.**

**Civil Action No. 95–000084–H.**

United States District Court,
W.D. Virginia,
Harrisonburg Division.

Feb. 22, 1996.

Dana Sheppard Power, Shapiro & Burson, Virginia Beach, VA, for appellant.

Roy Vergil Wolfe, III, Julias, Blatt & Wolfe, P.C., Harrisonburg, VA, for appellee.

## *MEMORANDUM OPINION*

MICHAEL, District Judge.

This matter comes before the court upon the appeal of Ontra, Incorporated ("Ontra") of an Order of the United States Bankruptcy Court for the Western District of Virginia, Harrisonburg Division, Judge Ross W. Krumm, overruling Ontra's motion to reconsider or to grant relief from a judgment of default. Previously, the bankruptcy judge had entered default judgment against Ontra establishing $125,000.00 as the amount of Ontra's lien on debtors' real property. Ontra claims that the debt exceeded $150,000.00 and therefore seeks reconsideration. For the reasons stated below, the court affirms the judgment of the bankruptcy court.

## I.

On December 16, 1994, William Lee Gardner, Jr. and his current wife, Lori Ellen Newton Gardner (the "Debtors"), filed a joint, voluntary petition in bankruptcy, pursuant to Chapter 7 of the Bankruptcy Code. The appellee, Roy V. Wolfe, III, was appointed as Trustee (the "Trustee").

Debtor Gardner and his former wife held, as tenants by the entirety, real property consisting of a single-family residence located in Prince William County, Va. The former Gardners had executed a promissory note in the original principal amount of $129,000.00 secured by a deed of trust and constituting a first lien on the property. At the time of the petition in bankruptcy, the loan was held by the Resolution Trust Corporation ("RTC") as Conservator for Carteret Savings Bank ("Carteret"). In January 1995, the RTC sold the loan to OCI Mortgage Corporation ("OCI"). The appellant, Ontra, services this loan for OCI.

On June 7, 1995, the Trustee filed, in the form of an adversary proceeding, a "Complaint to Sell Real Estate Free and Clear of Liens and Co–Owner's Interest." In the Complaint, the Trustee listed the fair market value of the property at $165,000.00. In addition, the Trustee stated that the current outstanding balance of the sole lien against the property was $125,000.00.[1] On June 6, 1995, the Trustee sent a "Summons and Notice of Pre–Trial Conference" to Ontra, as required by the Bankruptcy Code. Ontra did not file an Answer to the Complaint.

On July 14, 1995, the Trustee filed a "Report of Purchase Offer for Real Estate and Motion for Confirmation of Purchase Offer" reflecting the receipt of a contract to purchase the property for $157,000.00 and requesting that the Bankruptcy Court confirm the sale. Also on that date, the Trustee sent to Ontra a Notice of a hearing concerning the purchase offer, to which Ontra did not respond. By Order dated July 19, 1995, the Bankruptcy Court authorized the sale of the property free and clear of liens.

On July 20, 1995, the Trustee filed a motion styled "Motion for Entry of Default Judgment." Again, on that same date, the Trustee sent to Ontra a notice of the hearing scheduled for August 4, 1995. It appears from the record, however, that Ontra did not respond to the Motion or make an appearance at the hearing. At the August 4 hearing, the Bankruptcy Court entered Default Judgment establishing the amount of Ontra's lien as $125,000.00—the amount alleged in the Complaint.

On August 14, 1995, Ontra moved the Bankruptcy Court to reconsider or to grant relief from the Order of Default Judgment. The Bankruptcy Court overruled Ontra's motion. Ontra now prosecutes this appeal.

## II.

■ The district court reviews findings of fact by the bankruptcy court pursuant to a clearly erroneous standard and reviews the conclusions of law *de novo*, *In re Tudor Assocs., Inc. II*, 20 F.3d 115, 119 (4th Cir. 1994); *In re Morris Communications NC, Inc.*, 914 F.2d 458, 467 (4th Cir.1990); *Lowe's of Virginia, Inc. v. Thomas*, 60 B.R. 418, 419 (W.D.Va.1986).

This appeal presents several questions of first impression for this court and, apparently, for courts within the Fourth Circuit. As the court understands the case, it must resolve (1) whether Rule 7001 of the Bankruptcy Rules of Procedure requires a trustee to bring an adversary proceeding for determining the value and extent of a lien on property, which proceeding must be separate and apart from an active adversary proceeding initiated to obtain the bankruptcy court's approval for the sale of the underlying real property free and clear of the subject lien; and, (2) whether the bankruptcy court erred in denying the appellant's motion to reconsider its grant of default judgment under the circumstances presented by this case. The court will address these questions *seriatim*.

---

1. At oral arguments before both the bankruptcy court and this court, the Trustee represented that on March 3, 1995, he spoke by telephone to Bill Brown, a representative of Ontra. The Trustee stated that Mr. Brown identified the lien at issue in this case as "Loan Number 50970022." The Trustee recalled that Mr. Brown recited the lien's outstanding balance as $124,027.00."

### A. Rule 7001 Adversary Proceeding

■ Ontra suggests that Rule 7001 of the Bankruptcy Rules of Procedure requires that the Trustee bring a separate adversary proceeding to determine the value and extent of Ontra's lien on certain property, as opposed to permitting the court to determine the value of the lien within the context of the adversary proceeding instituted to grant the Trustee approval to sell the subject property. The court disagrees.

> Rule 7001, in relevant part, provides that
>
> An adversary proceeding is governed by the rules of this Part VII. It is a proceeding . . . (2) to determine the validity, priority, or extent of a lien or other interest in property, other than a proceeding under Rule 4003(d)[2]; [or] (3) to obtain approval pursuant to § 363(h) for the sale of both the interest of the estate and of a co-owner in property. . . .

Ontra directs the court's attention to Rule 3012—valuation of security. Rule 3012 provides:

> The court may determine the value of a claim secured by a lien on property in which the estate has an interest on motion of any party in interest and after a hearing on notice to the holder of the secured claim and any other entity as the court may direct.

Ontra relies upon the Advisory Committee Notes to argue that Rule 3012 requires the Trustee to institute a separate adversary proceeding: "An adversary proceeding *is commenced* when the validity, priority, or extent of a lien is at issue as prescribed by Rule 7001." (emphasis added). Ontra stresses that the phrase *"is commenced"* indicates that a party must commence a discrete adversary proceeding whenever the value or extent of a lien on property is to be determined by the court, as opposed to making that determination within the context of granting approval to sell the property subject to the lien, for which an adversary proceeding has been commenced and remains on the active docket of the bankruptcy court. This court disagrees.

■ The court is more persuaded by the "Bankruptcy Code—Comment" to Rule 3012:

> This rule [Rule 3012] implements § 506(a) of the Code with respect to valuation of a secured claim in order to determine the extent to which it is secured and the extent to which it is unsecured. Valuation is important for various reasons in title 11 cases and *normally such valuation would arise within the context of the particular purpose for which it is necessary.* The rule provides a *general procedure* when valuation may be important *in the absence* of a particular context.

(emphasis added). It appears clear to the court that Rule 3012 is included in the Bankruptcy Rules to provide a procedure for determining valuation of security when the valuation issue arises alone and not within the context of another bankruptcy proceeding. In the instant case, the issue of determining the value and extent of Ontra's lien on the property arose within the context of granting the Trustee approval to sell the subject property. Rule 3012 does not require a trustee to institute a discrete adversary proceeding under every situation in which valuation of a secured claim is at issue.

In support of its proposition of a separate adversary proceeding, Ontra relies upon the recent case of *Cen–Pen Corp. v. Hanson,* 58 F.3d 89 (4th Cir.1995). Ontra's reliance, however, is misplaced. In *Cen–Pen,* the court held that an adversary proceeding was required to determine the value and extent of a lien, as opposed to the confirmation of a Chapter 13 plan that purportedly voided the lien. Thus, in *Cen–Pen,* the debtors had failed to initiate an adversary proceeding in any context to effectuate the voiding of the creditor's lien. In the instant case, by contrast, the Trustee initiated the adversary proceeding to obtain approval to sell real property free and clear of all liens, and the issue of the value of Ontra's lien on the subject real property arose within the context of that adversary proceeding. The deci-

---

**2.** Rule 4003(d) is inapplicable to this matter. Rule 4003(d) provides that "[a] proceeding by the debtor to avoid a lien or other transfer of property exempt under § 522(f) of the Code shall be by motion in accordance with Rule 9014."

sion in *Cen–Pen* is not dispositive of the question of whether an adversary proceeding to determine the value and extent of a lien must be initiated separate and apart from the active adversary proceeding initiated to obtain approval for the sale of the underlying real property free and clear of such lien.

## B. Default Judgment

■ Bankruptcy Rule 7055 provides that Federal Rule of Civil Procedure 55 applies in adversary proceedings. Fed.R.Civ.P. 55(a) provides that an entry of default may be entered against a party against whom a judgment for affirmative relief is sought and that party has failed to plead or otherwise defend. Judgment by default may be entered by the court against such party for a sum which by computation cannot be made certain. Fed. R.Civ.P. 55(b)(2). For "good cause shown," a court may set aside an entry of default and, in accordance with Fed.R.Civ.P. Rule 60(b), may set aside a judgment by default. Fed. R.Civ.P. 55(c). Fed.R.Civ.P. 60(b) sets forth conditions upon which a court "may relieve" a party from the effect of a final judgment. It appears to the court that subsection (1) to Rule 60(b)—that such relief should be granted due to "mistake, inadvertence, surprise, or excusable neglect"—is the provision relevant to this appeal.[3]

Ontra urges this court to consider three factors in determining whether the court should set aside the entry of default judg-ment: (1) whether the default was willful; (2) whether setting it aside would prejudice the adversary, and (3) whether a meritorious defense is presented. *Dierschke,* 975 F.2d at 183. *See also O'Connor v. State of Nevada,* 27 F.3d 357, 364 (9th Cir.1994) (noting that these three elements were to be considered in determining whether to set aside a default judgment pursuant to Rule 60(b), as opposed to setting aside an entry of default, pursuant to Rule 55(c)), *cert. denied,* —— U.S. ——, 115 S.Ct. 1367, 131 L.Ed.2d 223 (1995). The *Dierschke* court noted that "when the court finds an intentional failure of responsive pleadings there need be no other finding." *Dierschke,* 975 F.2d at 184; *see also id.* at 184–85 ("Willful failure alone may constitute sufficient cause for the court to deny [the motion to set aside default judgment]."); *Widmer–Baum v. Chandler–Halford,* 162 F.R.D. 545, 553 (N.D.Iowa 1995) ("[T]he defaulting party cannot qualify for relief from a default judgment on Rule 60(b)(1)'s grounds if its default was not inadvertent or excusable, but willful."). Courts describe the "willfulness" factor as " 'culpability' or lack of a 'good reason' on the part of the defaulting party leading to the entry of the default judgment." *Id.* (citing *Whelan v. Abell,* 48 F.3d 1247, 1259 (D.C.Cir.1995); *Jones v. Phipps,* 39 F.3d 158, 164–65 (7th Cir.1994); *O'Connor,* 27 F.3d at 364; *Florida Physician's Ins. Co. v. Ehlers,* 8 F.3d 780, 784 (11th Cir.1993)).[4]

**3.** The court perceives some degree of inconsistency in the written pleadings submitted by the parties. Both parties recite the issue presented as whether Ontra has demonstrated "good cause" for the bankruptcy court to set aside the entry of judgment by default. Ontra, at least, proceeds to discuss the issue of "excusable neglect" in the context of setting aside the entry of default judgment. In order to employ the "good cause" standard, Ontra would have to seek to set aside the *entry of default.* However, the court believes that there is little doubt that Ontra was in default and that an entry of default against Ontra was proper under the circumstances of this case. It appears clear to the court that Ontra seeks to have the court reconsider the *entry of judgment by default,* and, in that case, Ontra must demonstrate "mistake, inadvertence, surprise, or excusable neglect." Ontra correctly, therefore, proceeds to argue "excusable neglect" in the body of its brief. Perhaps the distinction is merely technical, but the court believes it necessary to clarify that its analysis proceeds based upon the "excusable neglect" condition, as prescribed pursuant to Rule 60(b). *See, e.g., Dierschke v. O'Cheskey,* 975 F.2d 181, 184 (5th Cir.1992) ("[W]hile courts apply essentially the same standard to motions to set aside a default and a judgment by default, the former is more readily granted than a motion to set aside a default judgment.") (footnote omitted); *FSLIC v. Kroenke,* 858 F.2d 1067 (5th Cir.1988).

**4.** The court acknowledges that "willful" "is a word of many meanings, its construction often being influenced by its context." *Screws v. United States,* 325 U.S. 91, 101, 65 S.Ct. 1031, 1035, 89 L.Ed. 1495 (1945) (quoting *Spies v. United States,* 317 U.S. 492, 497, 63 S.Ct. 364, 367, 87 L.Ed. 418 (1942)). Of course, when used in the criminal context, "willful" commonly means "an act done with a bad purpose; without justifiable excuse; stubbornly, obstinately, perversely." *United States v. Murdock,* 290 U.S. 389, 394, 54 S.Ct. 223, 225, 78 L.Ed. 381 (1933) (internal citations omitted). In the context of a motion

On addressing whether the default was willful, Ontra discusses whether its neglect to respond and defend was willful. First, Ontra claims that the notice provided was inadequate pursuant to the Bankruptcy Rules and Code.[5] Turning first to the Rules, the court finds that in the initial Complaint, the Trustee cites, *inter alia,* to Bankruptcy Rule 6004(c). Rule 6004(c) provides:

A motion for authority to sell property free and clear of liens or other interests shall be made in accordance with Rule 9014 and shall be served on the parties who have liens or other interests in the property to be sold. The notice required by subdivision (a) of this rule shall include the date of the hearing on the motion and the time within which objections may be filed and served on the debtor in possession or trustee.

Rule 6004(a) provides:

Notice of a proposed use, sale, or lease of property, other than cash collateral, not in the ordinary course of business shall be given pursuant to Rule 2002(a)(2), (c)(1), (i), and (k) and, if applicable, in accordance with § 363(b)(2) of the Code.[6]

Turning to Rule 2002, the court finds the following relevant provisions:

(a) Except as provided in subdivisions (h), (i) and (*l*) of this rule, the clerk, or some other person as the court may direct, shall give the debtor, the trustee, all creditors and indenture trustees not less than 20 days notice by mail of ... (2) a proposed use, sale, or lease of property of the estate other than in the ordinary course of business, unless the court for cause shown shortens the time or directs another method of giving notice....

(c)(1) Subject to Rule 6004 the notice of a proposed use, sale, or lease of property required by subdivision (a)(2) of this rule shall include the time and place of any public sale, the terms and conditions of any private sale and the time fixed for filing objections. The notice of a proposed use, sale, or lease of property, including real estate, is sufficient if it generally describes the property.[7]

Finally, Rule 9014, in relevant part, provides

In a *contested matter* in a case under the Code *not otherwise governed by these rules,* relief shall be requested by motion, and reasonable notice and opportunity for hearing shall be afforded the party against whom relief is sought. No response is required under this rule unless the court orders an answer to a motion. The motion shall be served in the manner provided for service of a summons and complaint by Rule 7004, and, unless the court otherwise directs, the following rules shall apply, 7021, 7025, 7026, 7028–7037, 7041, 7042, 7052, 7054–7056, 7064, 7069, and 7071.

(emphasis added).

The court has painstakingly set out these provisions of the Bankruptcy Rules to allow it to address any issue of notice that Ontra

---

under Fed.R.Civ.P. 60(b)(1), however, the courts have variously defined the standards by which "willfulness" is to be determined. "Willfulness" can exist where "the party intended to violate court rules and procedures," *Information Sys. & Networks Corp. v. United States,* 994 F.2d 792, 796 (Fed.Cir.1993); where there is "monumental incompetence," *Whelan,* 48 F.3d at 1259; where the defendant "has received actual or constructive notice of the filing of the action and failed to answer," *Price v. Seydel,* 961 F.2d 1470, 1473 (9th Cir.1992); and, where the defendant "abscond[s] from the jurisdiction of the court or [tries] to avoid liability by physically avoiding the proceedings." *Swink v. City of Pagedale,* 810 F.2d 791, 792 (8th Cir.), *cert. denied,* 483 U.S. 1025, 107 S.Ct. 3274, 97 L.Ed.2d 772 (1987). It is clear to the court that the determination of "willfulness" is case specific—it must be made considering the unique circumstances of each case.

5. The court feels compelled to comment upon the arduous task undertaken by the unsuspecting jurist who endeavors to wade through the morass of provisions compiled loosely as the Bankruptcy Code and Rules. The court notes that it could easily recite fifty or more provisions concerning the issue in the instant case; however, the court will endeavor to spare the reader of this opinion from the prolixity and the inevitable resultant perplexity.

6. Section 363(b)(2) of the Bankruptcy Code is inapplicable to this action.

7. The court finds that subsections (h), (i), and (k) of Rule 2002 are not implicated under the circumstances of this appeal.

may choose to raise. First, the court is unable to perceive the manner in which Rule 6004(c) is implicated under the circumstances of this appeal. Rule 6004(c) governs the motion for authority to sell the property free and clear of liens and other interests. Ontra has admitted that it had "no real opposition" to the request to sell the property free and clear of its lien. Likewise, Rule 6004(a) and Rule 2002(a)(2), (c)(1), (h), (i), and (k) are not implicated under the circumstances of this appeal: Rule 6004(a) directs attention to provisions of Rule 2002 governing notice requirements of a proposed use, sale, or lease of property; and Rule 2002 governs the technical requirements of notice to sell use, sell, or lease property of the bankrupt's estate. Finally, Rule 9014 is inapplicable to this case because it governs notice requirements for "*contested matters*" that are "*not otherwise governed by these rules.*" Ontra did not contest the use, sale, or lease of the subject property and, only upon prosecuting this appeal, contested the determination of the value or extent of its lien on the subject property. Even if Ontra's actions may be construed as "contesting" the motion to determine the value of its lien, this matter is "otherwise governed" by the rules, and, therefore, Rule 9014 is inapplicable.[8]

Now the court wearily turns its attention to the applicable provisions of the Bankruptcy Code. The Trustee cites to § 363(h) in his Complaint. Section 363(h) provides as follows:

> Notwithstanding subsection (f) of this section, the trustee may sell both the estate's interest, under subsection (b) or (c) of this section, and the interest of any co-owner in the property in which the debtor had, at the time of the commencement of the case, an undivided interest as a tenant in common, joint tenant, or tenant by the entirety, only if—
>
> (1) partition in kind of such property among the estate and such co-owners is impracticable;
>
> (2) sale of the estate's undivided interest in such property would realize significantly less for the estate than sale of such property free of the interests of such co-owners;
>
> (3) the benefit to the estate of a sale of such property free of the interests of co-owners outweighs the detriment, if any, to such co-owners; and
>
> (4) such property is not used in the production, transmission, or distribution, for sale, of electric energy or of natural or synthetic gas for heat, light, or power.

To grasp a complete understanding of a trustee's authority to sell property of a debtor's estate, the court must examine § 363(f):

> The trustee may sell property under subsection (b) or (c) of this section free and clear of any interest in such property of an entity other than the estate, only if—
>
> (1) applicable nonbankruptcy law permits sale of such property free and clear of such interest;
>
> (2) such entity consents;
>
> (3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;
>
> (4) such interest is in bona fide dispute; or
>
> (5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

The sole section governing notice— § 363(b)(1)—provides that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate."[9] Again, consistent with its analysis of the relevant provisions of the Bankruptcy Rules, the court is unable to perceive the applicability of the cited sections of the Code. These Code sections merely govern the authority of a trustee to sell certain property of a debtor and

---

8. In addition, the court has reviewed Rules 7021, 7025, 7026, 7028–7037, 7041, 7042, 7052, 7054–7056, 7064, 7069, and 7071. Based upon the facts and pleadings presented to the court, the court concludes that none of these cited Rules were violated in this case.

9. In the court's viewpoint, sections 363(b)(2) and (c) are inapplicable to the circumstances of this action.

require only that the parties in interest receive notice and a hearing.

Finally, Ontra argues that in the Complaint, the Trustee sought only the court's approval to sell the property free and clear of any liens, and that Ontra cannot be charged with being on notice that the value of its lien would be determined within the context of this adversary proceeding. The court cannot agree. The Complaint contained a section denominated as "II. VALUE OF THE PROPERTY AND EXTENT OF LIENS." Paragraph (8) of the Complaint stated:

> That by deed of trust dated October 28, 1988, the Debtor and the Defendant, LaDonna S. Gardner conveyed the Property to Robert M. Miller and George N. Bowman, Jr., Trustees, to secure the payment of a certain indebtedness in the principal sum of ONE HUNDRED TWENTY-NINE THOUSAND DOLLARS ($129,-000.00), plus interest thereon, to the Defendant, Carteret Savings Bank, FA.... The deed of trust constitutes a first and valid lien against the Property. The outstanding balance of this obligation, including principal, interest, late charges and attorney's fees as of the petition filing date is ONE HUNDRED TWENTY-FIVE THOUSAND DOLLARS ($125,000.00).

The court believes that the allegations as set forth in the Trustee's Complaint would have put a reasonable holder of a security interest on notice that the value and extent of its lien against the subject property was at issue in the adversary proceeding. Indeed, the court believes that Ontra should have, at the very least, filed an Answer denying the allegation as set forth in Paragraph (8) and setting forth Ontra's computation of the lien's value. Additionally, Ontra received the notice denominated as "SUMMONS AND NOTICE

OF PRE-TRIAL CONFERENCE," in which it is stated: "IF YOU FAIL TO RESPOND IN ACCORDANCE WITH THIS SUMMONS, JUDGMENT BY DEFAULT MAY BE TAKEN AGAINST YOU FOR THE RELIEF DEMANDED BY THE COMPLAINT." [10] Ontra failed to respond, the bankruptcy court entered judgment by default against Ontra, and Ontra cannot now claim that its failure to respond was due to excusable neglect.

At oral argument before this court, counsel for Ontra argued that the Complaint was devoid of any suggestion to place Ontra on notice of a possible detriment to the status of its lien. The court cannot agree. The court directs Ontra's attention to § 506(a) of the Bankruptcy Code:

> An allowed claim of a creditor secured by a lien on property in which the estate has an interest ... is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property ... and is an unsecured claim to the extent that the value of such creditor's interest ... is less than the amount of such allowed claim. Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or a plan affecting such creditor's interest.

Thus, "[u]nder the Bankruptcy Code, a creditor that has an allowed claim on collateral with a value *less* than the amount owed on that claim holds two claims: a secured claim equal to the value of the collateral, and an unsecured claim for the excess of the claim over the value of the collateral." *In re Midway Partners*, 995 F.2d 490, 494 (4th Cir.) (emphasis in original), *cert. denied sub nom, Scheffey v. Resolution Trust Corporation*,

---

10. Ontra claims that the determination of the value and extent of its lien was not the "relief demanded by the complaint." Ontra claims that the Complaint "demands" only the court's approval for the sale of the property. Ontra claims that the inclusion in the Complaint of the phrase—"and for such other and further relief as the Court may deem proper"—is insufficient to put it on notice that the value of its lien was "other and further relief" to be determined by this adversary proceeding. The court disagrees. Again, Ontra's representatives should have read the Complaint, should have realized that its lien was at issue in the Complaint, and should have realized *that the value of the Ontra lien recited in the Complaint was not the amount that Ontra now contends is the proper value of the lien.* Ontra should have realized that the value and extent of its lien could be determined because such a determination was reasonable within the context of the overall sale of the subject property. By contrast, Ontra chose not to respond in any manner to the allegations contained within the Complaint.

—— U.S. ——, 114 S.Ct. 599, 126 L.Ed.2d 564 (1993). The value of collateral is generally best determined by the price paid in an arm's length transaction. *See Collier Bankruptcy Manual* ¶ 506.03 at 506–18 (3d ed. 1995) ("Regardless of the purpose of the valuation, if an actual disposition is to occur, the value of the collateral should be based on the consideration to be received by the estate in connection with the disposition, provided that the court determines that such consideration is fair and was arrived at on an arm's-length basis."). In the instant case, the court understands that the Trustee did not have a prospective sale for the property at the time the Trustee filed the Complaint. Thus, Ontra could not have been assured that the valuation of the subject real property would equal or exceed its alleged value of its lien. *See, e.g., id.* at 506.16 ("In fact, a party in interest can rarely predict precisely a court's valuation of property in the absence of a prior agreement among the parties or an actual disposition of the property."). Consequently, Ontra should have contemplated a situation arising within the discrete context of granting approval to sell the real property free and clear of liens whereby the value or extent of its lien as a secured claim could be affected.[11] For instance, if the Trustee had successfully moved the bankruptcy court to approve a purchase price of $130,000.00, then Ontra would have had a secured claim equal only to the valuation of the property—$130,-

000.00—and an unsecured claim on the remaining proximate $20,000.00, pursuant to § 506(a).[12] Thus, the court believes that Ontra should have envisioned a situation in which the proceeding to grant approval to sell the property could have operated to its detriment by affecting the extent of its secured claim.

Finally, the court is convinced that Ontra, as a sophisticated creditor, is "not entitled to stick its head in the sand and pretend it would not lose any rights by not participating in the proceedings." *Piedmont Trust Bank v. Linkous,* 990 F.2d 160, 163 (4th Cir.1993) (quoting *Matter of Pence,* 905 F.2d 1107, 1109 (7th Cir.1990)). The court is influenced by the evidence demonstrating that Ontra received numerous notices regarding proceedings in this adversary proceeding. Before the adversary proceeding was initiated, the Trustee telephoned Ontra to inquire about the outstanding balance owed on the loan;[13] Ontra received a notice of a pre-trial conference; Ontra received the notice of a hearing conducted to grant approval to sell the property; and Ontra received the notice of a hearing on the motion for default judgment. Ontra "should have known that its interests were in jeopardy," *id.,* and should have responded accordingly. The court is unable to conclude that Ontra's failure to respond was anything other than "willful," as that term is used within the context of civil proceedings.[14] Accordingly, the court con-

11. The determination of the value or extent of a secured claim, pursuant to § 506(a), would not have required the Trustee to institute a separate adversary proceeding. *See, e.g., In re Crestwood,* 127 B.R. 213 (Bankr.E.D.Ark.1991) (holding that a debtor did not have to institute an adversary proceeding to determine the value of a creditor's collateral for the purpose of determining the extent to which the creditor holds a secured claim).

12. The court is mindful that the bankruptcy court could not have declared the unsecured portion of the lien as void without the requisite notice and hearing, pursuant to § 506(d). *See Dewsnup v. Timm,* 502 U.S. 410, 112 S.Ct. 773, 116 L.Ed.2d 903 (1993).

13. The evidence that the Trustee contacted Ontra before the adversary proceeding was instituted stands at odds with Ontra's contention that it had some difficulty sifting through the loans obtained from the RTC. In March 1995, Ontra was sufficiently aware of the loan to enable its repre-

sentative to recite a loan number and to quote an outstanding balance. If Ontra was aware of the loan as early as March 1995, it is reasonable to expect Ontra to defend in an adversary proceeding initiated in June 1995.

14. Because the court holds that Ontra's failure to defend was "willful," it is not necessary that the court proceed to analyze the last two factors in determining whether to set aside the entry of default judgment: (1) whether setting aside the default judgment could prejudice the Trustee or the estate, and (2) whether Ontra presents a meritorious defense. *See, e.g., Waifersong, Ltd., Inc. v. Classic Music Vending,* 976 F.2d 290, 291 (6th Cir.1992) ("It is only when the [movant can carry the burden of demonstrating the absence of willfulness] that he will be permitted to demonstrate that he also can satisfy the other two factors: the existence of a meritorious defense and the absence of substantial prejudice to the [nonmovant] should relief be granted." *Cf. Widmer–Baum,* 162 F.R.D. at 553 n. 3 (dictum) ("The

cludes that the Bankruptcy Court did not err either by entering default judgment against Ontra or by denying Ontra its requested relief.

### III.

For the reasons stated, the judgment of the bankruptcy court denying Ontra's motion to reconsider or to grant relief from its entry of default judgment against Ontra shall be, and it hereby is, *AFFIRMED.*

court can conceive of situations where a total lack of prejudice and availability of an absolute defense might outweigh even a willful failure to answer the complaint, but believes that such a circumstance would indeed be extremely narrow, and is more properly provided for in Rule 60(b)(6).'').