**In re Brad Leroy WESTENBERG and Leanna Marie Westenberg, Debtors.**

**No. 03–21749.**

United States Bankruptcy Court, E.D. Wisconsin.

March 30, 2007.

Mark Bromley, Whitewater, WI, for Debtors.

Brad Leroy Westenberg, Watertown, WI, pro se.

Leanna Marie Westenberg, Watertown, WI, pro se.

## MEMORANDUM DECISION ON DEBTORS' OBJECTION TO TRUSTEE'S MOTION TO DISMISS

MARGARET DEE McGARITY, Chief Judge.

The debtors filed a petition under chapter 13 on February 10, 2003, and their plan was confirmed on October 30, 2003. On January 3, 2007, the trustee filed a motion to dismiss the case, claiming the debtors failed to provide 2005 income tax returns and one-half of the refunds, if any, and the plan was not feasible to complete within five years. In opposition to the motion, the debtors noted their compliance with the tax return and refund requirements and asserted that all plan payments had been made, entitling them to a discharge.

At the January 30, 2007, hearing before the court the trustee argued the debtors were not entitled to a discharge because the secured claims filed by the United States Department of Agriculture Farm Service Agency and M & I Marshall & Ilsley Bank had not yet been fully satisfied. The debtors asserted that according to the confirmed plan, the remaining amounts owed to FSA and M & I Bank after the 36–month plan term were to be paid by them directly.

This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), and the court has jurisdiction under 28 U.S.C. § 1334. The following constitutes the court's findings of facts and conclusions of law pursuant to Fed. R. Bankr.P. 7052.

## BACKGROUND

The plan classified the claims as follows:

Class 1: Administrative claims, including debtors' attorney fees.

Class 2: The fully-secured claim of the Farm Service Agency of the United States Department of Agriculture, secured by a first lien on debtors' farm personal property, and a third lien on debtors' real estate.

Class 3: The claim of M & I Marshall & Ilsley Bank, fully secured by a second lien on debtors' farm real estate and by a second lien on debtors' farm personal property.

Class 4: The claim of Dodge County for real estate taxes, secured by a paramount lien on debtors' real estate.

Class 5: Unsecured claims. This class includes the claims of all judgment holders, because there is insufficient value in the real estate to afford security for their claims after deduction of prior liens and debtors' homestead exemption.

(Article I, Chapter 13 Plan filed 2/24/2003). The plan further provided the following treatment of claims:

Class 1: Claims in this class shall be paid according to the terms of the Debt Service Table at the end of this Article.

Class 2: This claim will be paid on a monthly basis according to the terms specified in the Debt Service Table. Interest rates shall be fixed at the levels shown in the table.

Class 3: This claim will be paid in part through sale or conveyance of debtors' real estate, as described in Article III hereof. The balance of the claim after such sales will be paid on a monthly basis according to the terms specified in the Debt Service Table. Interest rates shall be fixed at the levels shown in the table.

Class 4: This claim will be paid in full through sales of debtors' real estate, as described in Article III hereof.

Class 5: Claims in this class shall be paid according to the terms of the Debt Service Table at the end of this Article. Individual claims in the class will receive pro-rata payments from the fund shown as the class claim. After completion of the land sales described in Article III, the remaining claims in Classes 2 & 3 shall be determined, and the monthly payment for those classes shall be re-calculated in accordance with the terms specified in the table. After that step is taken, the Class 5 claim shall be set at an amount which the debtors' remaining disposable income, less trustee's fees, will amortize on the terms set forth in the Table.

## DEBT SERVICE TABLE

| Class | Claim | Amort Period | Fixed Period | Interest Rate | Mnthly Pymt |
|-------|-------|--------------|--------------|---------------|-------------|
| 1. Admin. | 2,400 | 0.6 | 3 | 0.0% | Note 1 |
| 2. USDA | 100,000 | 25 | 3 | 5.0% | 591.27 |
| 3. M & I Bank | 58,500 | 25 | 3 | 8.0% | 456.68 |
| 4. Unsecured | 12,000 | 2.4 | 3 | 0.0% | 416.67 |
| | | | | Subtotal: | $ 1,465.62 |
| | | | | Annual: | $17,587.45 |
| | | | | Trustee: | $ 1,954.16 |

Plan payment, every two weeks: $ 751.60

(Article II, Chapter 13 Plan filed 2/24/2003). Article III of the plan provided for payments to the trustee by wage assignment, as well as the sale of certain parcels of real estate.

The court approved the sale of two parcels of the debtors' real estate free and clear of liens, resulting in a reduction of the balances owed FSA and M & I Bank. FSA's objection to confirmation was resolved by a stipulation wherein the priority of FSA's lien was clarified and its claim was amortized over 20 years, rather than the 25 years amortization which the plan originally provided. (Stipulation between Debtors and United States of America dated September 3, 2003). The stipulation further provided that the "plan [did] not modify, exclude or lessen debtors' responsibilities and agreements, other than any changes provided in the plan to the amounts and repayment terms, contained in the notes, mortgages, and security instruments with the Farm Service Agency."

(Stipulation between Debtors and United States of America dated September 3, 2003). The court confirmed the plan, as modified, on October 30, 2003.

The secured claim of M & I Bank at the time of this objection was $25,935.18. (Proof of Claim no. 12, filed January 12, 2007, amending Proof of Claim no. 11). The bank had originally filed a proof of claim on March 6, 2003, in the amount of $210,645.69 (Proof of Claim no. 4), and after receiving proceeds from the sale of the real estate, amended its secured claim to $35,943.86 on January 22, 2004. (Proof of Claim no. 11).

FSA filed a secured claim in the amount of $100,242.52 on September 15, 2003. (Proof of Claim no. 10). On March 25, 2004, the debtors and the United States of America filed a stipulation of modification of plan payments wherein the balance due on the FSA claim was reduced to $93,233.03, bearing interest at 5% per annum and amortized over 20 years by monthly payments of $623.43. The debtors' total monthly plan payments remained unchanged, with the newly available funds devoted to payment of unsecured claims. (Stipulation between Debtors and United States of America filed March 25, 2004; Order Modifying Plan Payments entered April 1, 2004). None of the claims of either creditor were objected to by the debtors or trustee.

From the beginning of the case until the time of this objection, the debtors made employer-deducted payments to the trustee in the amount of $752 bi-weekly. Along with additional funds remitted to the trustee by way of a creditor refund, income tax refunds, and a direct payment from the debtors, the debtors paid $94,381.92 into the plan. In turn, payments were disbursed to Dodge County, FSA and M & I Bank, along with the administrative expenses of debtors' counsel and the trustee.

## DISCUSSION

■ Section 502(a) of the Bankruptcy Code provides that proofs of claim filed under section 501(a) are allowed unless objected to. In turn, the plan must propose to distribute property having a value, as of the effective date of the plan, at least equal to the amount of the allowed secured claims provided for by the plan. 11 U.S.C. § 1325(a)(5)(B)(ii). A simple comparison of the sum total of all payments that have been made under the debtors' plan with the amount of the allowed secured claims reveals the plan payments will not pay all secured claims. No balloon payment at the end of the plan is provided for. If the plan were a simple "pot plan," our inquiry would end here and the debtors would face either an additional period of continued plan payments or dismissal of their case for lack of feasibility. However, the plan in this case anticipated and provided for payments to secured creditors well past the term of the plan.

The creditors in this case have not joined the trustee in his motion for dismissal, presumably because the plan did not release their liens on property retained by the debtors, and provided for payment on their secured claims over a lengthy post-plan amortization period. The plan provides that sales of property are free and clear of liens, with liens to attach to proceeds, but nothing requires release of any lien on property that the debtors continue to hold. Thus, the creditors, to the extent they are unpaid during the term of the plan, continue to hold liens on the debtors' property until paid.

■ Under section 1327(a), the plan is binding on the debtor and each creditor provided for by the plan as to all issues dealt with in the plan. 11 U.S.C. § 1327(a). Although the facts are decidedly different from this case, the court is persuaded by the reasoning of the Seventh

Circuit's ruling in *Matter of Pence*, 905 F.2d 1107 (7th Cir.1990), in deciding whether all creditors are bound by the terms of the confirmed plan. *Pence* involved a debtor who proposed a plan in which a secured creditor would receive property pursuant to section 1325(a)(5)(B)(ii) of a value greater than the secured creditor's claim in exchange for a release of the creditor's lien. The plan was confirmed without objection. When it became apparent that the property provided to the secured creditor had a value less than the allowed amount of the creditor's claim, the secured creditor attempted to enforce its lien. The court held that the creditor was bound by the provisions of the confirmed plan. *Id.* at 1110. The court addressed a due process argument, stating that notice of the filing of a chapter 13 petition was sufficient, in and of itself, to put the creditor on notice that its rights may be altered. *Id.* at 1109. The creditor had an affirmative duty to monitor the proceeding to determine what aspects of the case the creditor may have wanted to challenge. *Id.* The court stated that the creditor was "not entitled to stick its head in the sand and pretend it would not lose any rights by not participating in the proceedings." *Id.* at 1109; *see also In re Harvey*, 213 F.3d 318 (7th Cir.2000) (holding that, to extent plan was ambiguous to creditor, it should have objected before plan confirmation).

Notwithstanding its prior determinations, in a controversial later decision, the Seventh Circuit held that a confirmed chapter 13 plan was not entitled to any res judicata effect. In *Matter of Escobedo*, 28 F.3d 34 (7th Cir.1994), a chapter 13 plan that did not include allowed administrative and tax priority claims as required under section 1322(a)(2) was confirmed without objection. Nearly five years after plan confirmation and two years after the debtor's final payment, the trustee petitioned the court to either modify the plan's pay-

ment schedule to include the already allowed administrative and tax priority claims, or dismiss the plan altogether. The debtor did not modify the plan and the bankruptcy court dismissed the entire case. The district court affirmed. The Seventh Circuit also affirmed, holding that because the debtor's proposed plan did not comply with the mandatory provision of section 1322(a)(2), "any supposed confirmation was nugatory and properly dismissed." *Id.* at 35. Accordingly, the court held that the confirmed plan was not binding as to the omitted priority claims. Apparently, the Seventh Circuit has drawn a distinction between an order confirming a chapter 13 plan that did not meet the discretionary requirements of section 1325(a)(5), and a plan that did not meet the mandatory statutory requirements of section 1322(a)(2). *Id.* Presumably, the former would not be nugatory.

The appellate courts have differing opinions on the whole "claim controls" versus "plan controls" issue. Some have held a provision of a confirmed plan cannot alter a claim filed by a creditor because section 502(a) provides that a filed proof of claim is deemed allowed absent objection. *See, e.g., In re Bateman*, 331 F.3d 821 (11th Cir.2003) (holding creditor's claim for mortgage arrearage survived confirmed plan to extent it was not satisfied); *In re Simmons*, 765 F.2d 547 (5th Cir.1985) (holding when no objection was filed to creditor's proof of secured claim prior to confirmation, the claim was deemed allowed as a secured claim, even though plan treated it as unsecured and there had been no objection to the plan). Other courts of appeal have held that a confirmed plan cannot alter the rights of a creditor that has filed a secured proof of claim unless that creditor receives specific notice that the debtor seeks to reduce the value of its allowed secured claim in the confirmation process. *E.g., In re Linkous*, 990 F.2d

**900**

160 (4th Cir.1993). It should also be noted that in *In re Hovis,* 356 F.3d 820 (7th Cir.2004), the Seventh Circuit held that the chapter 11 debtor was not judicially estopped from objecting, postconfirmation, to a proof of claim.

 The court's *Pence* ruling appears to establish the principle that notice of filing a chapter 13 petition as sufficient notice *per se.* Notice of the filing of a petition imposes on the secured creditor a duty to inquire about the alteration of its rights under any proposed chapter 13 plan. Thus, the crucial question for this court appears to be: Did the creditors receive adequate notice of their rights under the plan?

Clearly, the plan spelled out the amortization periods of the secured claims and the creditors were not fooled by the plan's treatment of their claims. In fact, FSA was an active participant in the confirmation process and subsequent plan modification. M & I Bank also filed amended claims as the amount due was paid down by sales pursuant to the plan. While the claims show that amounts are still owed, the creditors have received payments as the plan provided, and the amortization period in the plan requires that they will continue to retain their liens and receive payments after the term of the plan. Under these circumstances, this court finds the debtors fully complied with the confirmed plan and are entitled to a discharge. The debtors' objection is sustained and the trustee's motion to dismiss is denied. A separate order consistent with this decision will be entered.

ORDER DENYING TRUSTEE'S MOTION TO DISMISS

For the reasons stated in the court's memorandum decision entered on this date, IT IS ORDERED the debtors' objection is sustained and the trustee's motion to dismiss is denied.