In re Dale Dean SIEMERS, Debtor.

Bankruptcy No. 4–96–2402.

United States Bankruptcy Court,
D. Minnesota.

Feb. 25, 1997.

**584**

David C. Hill, Brainerd, MN, for Debtor.

Thomas L. D'Albani, Cann, Haskell, D'Albani, Schueppert, Hazelton & Rodgers, P.A., Bemidji, MN, for Claimant First National Bank of Bemidji.

### ORDER DETERMINING EXTENT OF SECURED CLAIM OF FIRST NATIONAL BANK OF BEMIDJI

NANCY C. DREHER, Bankruptcy Judge.

The above-entitled matter came on for hearing before the undersigned on February 12, 1997 on the motion of the First National Bank of Bemidji to determine the extent of its secured claim against the Debtor's bankruptcy estate. Appearances were noted in the Court's record. After carefully considering the arguments of counsel, the Court has determined that the First National Bank of Bemidji is bound by the terms of the Debtor's confirmed Plan and that the Bank's claim arising from the August 8, 1994 promissory note is fully unsecured in character.

### FACTS

1. The Debtor in this case, Dale Dean Siemers ("Debtor"), is engaged in the business of producing wood shavings under the business name of Chippin' Dale's Wood Shavings. On November 21, 1991, the Debtor executed a promissory note in favor of the First National Bank of Bemidji ("Bank") for $45,000, secured by the following collateral used primarily for business purposes:

> All equipment of Debtor, whether now owned or hereafter acquired, including but not limited to all present and future machinery, vehicles, furniture, fixtures, manufacturing equipment, farm machinery and equipment, shop equipment, office and recordkeeping equipment, parts and tools, and the goods described in any equipment schedule or list herewith or hereafter furnished to Secured Party by Debtor....

In addition, the November 21, 1991 security agreement provided that the Debtor also granted the Bank a security interest in the following specific property: 1) a 1978 International tractor Series 1466; 2) a 1970 Oliver tractor Series 1750; 3) a Jackson shavings planer; 4) an Erjo chipper; 5) a Kewanee elevator; 6) a John Deere blower; 7) a Foley knife sharpener; 8) a Flatbed trailer; 9) a 1978 GMC trailer; 10) a 1981 GMC trailer; 11) a 1981 GMC trailer; and 12) a 1981 International truck.

2. On August 8, 1994, the Bank lent the Debtor $27,476.80 for the purpose of refinancing three earlier loans dated August 3, 1992, September 15, 1992, and August 5, 1993. The terms of the promissory note stated that the note was secured by the

Security Agreement dated November 21, 1991.

3. On January 30, 1996, the Bank lent the Debtor $2,000 for the purpose of purchasing a 1958 Ford Loader Truck. The terms of the promissory note stated that the note was secured by the Security Agreement dated November 21, 1991.

4. On April 17, 1996, the Debtor filed a voluntary petition under Chapter 13 of the United States Bankruptcy Code, along with a proposed Chapter 13 Plan. The Debtor's proposed Plan characterized the Bank's claim arising from the November 21, 1991 transaction as a fully secured claim in the amount of $3,400, and listed the Bank's claim arising from the January 30, 1996 transaction as a secured claim in the amount of $1,950 and an unsecured claim in the amount of $50. With respect to the Bank's claim arising from the August 8, 1994 transaction, the Debtor's proposed Plan characterized the Bank's claim as entirely unsecured in the amount of $19,300. In an exhibit attached to the Plan, the Plan stated that:

> [With respect to the August 8, 1994 transaction], First National has a non-purchased [sic] money, non-possessory security interest in certain tools an [sic] equipment used in the debtor's trade or business. The interest claimed by First National in said tools and equipment are hereby judicially avoided pursuant to 11 U.S.C. section 522(f). This claim will be treated entirely as unsecured for the purposes of the plan of reorganization. This claim receives the treatment provided for in paragraph 9 of the plan as an unsecured creditor.

5. On June 6, 1996, the Bank filed a proof of secured claim in the Debtor's bankruptcy case covering the November 21, 1991, the August 8, 1994, and the January 30, 1996 loan transactions. Also on June 6, 1996, the Court held a hearing on the confirmation of the Debtor's Plan. No objection was made to the Plan's confirmation, and the Court confirmed the Plan by Order dated June 6, 1996.

6. On August 12, 1996, the Bank filed an amended proof of claim covering the November 21, 1991, the August 8, 1994, and the January 30, 1996 loan transactions. On Sep-

tember 3, 1996, the Bank filed another amended proof of claim covering only the November 21, 1991 and August 8, 1994 loans.

7. On September 3, 1996, the Bank filed a Motion to Determine Status of Claims, arguing that the confirmation of the Debtor's Chapter 13 Plan in this case did not serve to extinguish its liens that arose from the August 8, 1994 loan transaction.

### CONCLUSIONS OF LAW

In the recent case of *Harmon v. United States,* 101 F.3d 574, 584 (8th Cir.1996), the United States Court of Appeals for the Eighth Circuit held that, upon confirmation of a Chapter 12 plan, 11 U.S.C. § 1227(c) operates to avoid the liens of all participating secured creditors that are provided for by the plan unless the terms of the plan provide otherwise. Similarly, pursuant to § 1141(c), a secured creditor who participates in a Chapter 11 reorganization case may also lose its lien by confirmation of a debtor's plan of reorganization that does not expressly preserve the lien. *FDIC v. Union Entities (In re Be–Mac Transp. Co.),* 83 F.3d 1020, 1025–26 (8th Cir.1996) (citing *Matter of Penrod,* 50 F.3d 459, 463 (7th Cir.1995)). Therefore, the well-known aphorism that "liens pass through bankruptcy unaffected" is actually far too broad, for there are many ways in which liens may be affected by bankruptcy proceedings. *Harmon,* 101 F.3d at 581.

The *Harmon* and *Be–Mac* courts each emphasized two very important limitations on a debtor's ability to strip down secured creditors' liens pursuant to 11 U.S.C. §§ 1141(c) or 1227(c), however. These courts each emphasized that, where a debtor's plan does not expressly preserve a secured creditor's lien, the confirmation of the plan acts to extinguish the lien *provided that:* 1) the lienholder participated in the debtor's bankruptcy case by filing a proof of claim; and 2) the property was either "dealt with" or "provided for" by the plan. *Harmon,* 101 F.3d at 581–82; *Be–Mac,* 83 F.3d at 1027. *See Penrod,* 50 F.3d at 461–62.

■ Section 1327 of the United States Bankruptcy Code provides, in part, that:

(b) Except as otherwise provided in the plan or the order confirming the plan, the confirmation of a plan vests all of the property of the estate in the debtor.

(c) Except as otherwise provided in the plan or in the order confirming the plan, the property vesting in the debtor under subsection (b) of this section is *free and clear of any claim or interest of any creditor provided for by the plan.*

11 U.S.C. 1327 (1994) (emphasis added). The provisions of this section are virtually identical to those found in 11 U.S.C. §§ 1141(c) and 1227(c), and this Court can find no reason to distinguish between the lien-stripping effect of confirmed plans in Chapter 11 and 12 cases and that in Chapter 13 cases. Therefore, in accordance with the *Harmon* and *Be–Mac* cases, the Court holds that the confirmation of a debtor's Chapter 13 plan operates to avoid the liens of all participating secured creditors provided for by the plan unless the terms of the plan provide otherwise. *See also Matter of Pence,* 905 F.2d 1107 (7th Cir.1990); *In re Szostek,* 886 F.2d 1405 (3rd Cir.1989); *Lee Serv. Co. v. Wolf (In re Wolf),* 162 B.R. 98 (Bankr.D.N.J.1993); *McDonough v. Plaistow Coop. Bank (In re McDonough),* 166 B.R. 9 (Bankr.D.Mass. 1994).

■ In this case, the terms of the Debtor's Chapter 13 Plan expressly provide that the Bank's lien against the equipment arising from the August 8, 1994 promissory note is "judicially avoided" in its entirety, and that the Bank will take solely as an unsecured creditor. It is therefore clear that the Bank's claim arising from the August 8, 1994 promissory note was "provided for by the plan" within the meaning of § 1327(c), and the only issue remaining is whether or not the Bank participated in the Debtor's bankruptcy case. A review of the procedural history of this case reveals the inevitable conclusion that the Bank clearly did participate in the Debtor's Chapter 13 case, as it filed three separate proofs of claim in this case with respect to the debt arising from the August 8, 1994 promissory note. As a result of the Bank's participation in the Debtor's Chapter 13 case, the confirmation of the Debtor's Chapter 13 Plan extinguished the

Bank's lien arising from the August 8, 1994 promissory note in its entirety, leaving the Bank with nothing but an unsecured claim with respect to this loan transaction.

■ In a last-ditch effort to retain its lien, the Bank makes a series of arguments which fail to change the outcome of this case. First, the Bank argues that, in a post-petition conversation between the Debtor and Randy Frisk, the Bank's loan officer, the Debtor indicated an intent to provide payment for the Bank with respect to the Bank's claim arising out of the August 8, 1994 loan transaction. Second, the Bank argues that, regardless of the terms of the Debtor's Chapter 13 Plan, the Debtor's Statement of Intention indicated an intent to pay the Bank's claim in full, making the paperwork submitted by the Debtor "confusing, inconsistent and misleading." The answer to each of these arguments is that it is the terms of a debtor's Chapter 13 plan that govern the postconfirmation treatment of the claims of participating secured creditors, not the debtor's Statement of Intention or other informal agreement. If a creditor doesn't like the treatment of its claim under the terms of a proposed plan, the creditor's remedy is to object to confirmation, not to ignore the plan and try to attack it later. Once a secured creditor chooses to participate in a bankruptcy case by filing a proof of claim, it acts at its peril and cannot be excused for failing to monitor the treatment of its claim under the terms of a properly noticed Chapter 13 plan.

■ Finally, the Bank argues that, even if the confirmation of the Debtor's Plan extinguishes its lien against the collateral arising from the August 8, 1994 transaction, the Debtor's wife owns a one-half interest in the collateral, and the Bank should therefore be able to foreclose on the Debtor's wife's interest in the collateral. This argument fails, of course, as the Debtor's wife never signed any of the Debtor's promissory notes or the Security Agreement, and the Bank's liens never attached to any interest that the Debtor's wife may have in the collateral.

ACCORDINGLY, IT IS HEREBY OR-DERED THAT First National Bank is bound by the terms of the Debtor's con-

firmed Plan and that First National Bank's claim against the Debtor's estate arising from the August 8, 1994 promissory note is fully unsecured in character.