**In re Tommy RAMEY.**

No. 2:02–bk–20705M.

United States Bankruptcy Court,
E.D. Arkansas,
Helena Division.

Nov. 12, 2003.

G. Gregory Niblock, Niblock & Associates, Stuttgart, AR, for Debtor.

## ORDER

JAMES G. MIXON, Bankruptcy Judge.

Before the Court are two objections to the claims of First National Bank of Eastern Arkansas ("First National") filed by Tommy Ramey ("Debtor") and an objection filed by First National to confirmation of the Debtor's third amended plan. After hearings on May 19 and July 8, 2003, at Helena, Arkansas, the Court took the various objections under advisement.

The matters before the Court are core proceedings pursuant to 28 U.S.C. § 157(b)(2)(B) and (L), and the Court has jurisdiction to enter a final judgment in this case.

## BACKGROUND

The Debtor filed a voluntary petition for relief under the provisions of Chapter 13 of the United States Bankruptcy Code on September 20, 2002. The Debtor did not schedule First National as a creditor, nor did the original proposed plan filed with the petition provide for any claim of First National. On November 1, 2002, the Debtor filed an amendment to his plan, which, like the original plan, did not provide for any claim of First National.

On November 20, 2002, First National filed two secured claims. The first claim, identified by account number 107053, was for the principal sum of $2639.92 and interest accruing from September 20, 2002, at 9.5% per annum. The second claim, identified by account number 540000226, resulted from a debt owed on a credit card in the amount of $1959.49 and interest accruing from September 20, 2002, at the rate of 10% per annum. The collateral securing both claims was listed as real estate valued in First National's claim at $4500.00. However, the Debtor's second amended plan, filed March 11, 2003, stated that First National held a secured claim collateralized by real property in the sum of $1600.00.[1]

On February 3, 2003, the Debtor filed an objection to the claim of First National. The objection alleged that the claim for $1959.49 was unsecured. On March 3, 2003, First National responded to the objection and alleged that the claim was secured pursuant to an "other indebtedness" clause in a trust deed granted by the Debtor to First National. Before the objection to the claim could be set for a hearing, the Debtor filed a second amended plan on March 11, 2003, and on March 13, 2003, the Debtor filed an additional objection to First National's secured claim for $2639.92 and interest. The objection alleged that the proper amount of the secured claim was $1598.80.

On March 14, 2003, the Chapter 13 Trustee filed a motion to allow claims. Notwithstanding that First National had filed two secured claims, the Trustee treated the claim of $1959.49 as "additional unsecured" even though no objection to the claim had been sustained. (Order Allowing Claims, March 14, 2003.) The

---

1. The second amended plan is unclear as to whether the $1600.00 figure refers to the value of the collateral or whether the plan disputes the total amount of the two claims.

Trustee's motion allowing claims was served on the Debtor, who was given 30 days to object. The motion was not served on First National, and the order allowing the claims became final in 30 days because there was no objection by the Debtor to the motion to allow claims.

On April 22, 2003, an order was entered confirming the Debtor's second amended plan filed March 11, 2003, because no objection to confirmation of the plan had been filed. The confirmed plan provided that First National would have a secured claim collateralized by realty in the sum of $1600.00 payable in full within the life of the plan at 9.5% interest and that First National would have an unsecured claim on account number 540000226, a Visa Card, in the sum of $1959.49.[2]

On June 3, 2003, the Debtor filed a third amended plan that treated First National's secured claim, identified by account number 107053, as an unsecured claim and reduced it to $2596.99. The plan treated the second claim, which was apparently the Visa claim, as an unsecured claim reduced to the sum of $355.92. On June 9, 2003, First National objected to the third amended plan filed June 3, 2003, alleging that its two claims should be treated as secured.

On July 8, 2003, a hearing was held on the Debtor's two objections to First National's claims and on First National's ob-

jection to confirmation of the third modified plan.[3]

The Debtor argues that since the plan treated First National's claim of $1959.49 as unsecured in the second amended plan filed March 11, 2003, and the plan was confirmed on April 22, 2003, without objection by First National, the principles of *res judicata* apply and, therefore, the Debtor's objection to the secured status of the claim for $1959.49 must be sustained.

First National argues that its claim is secured pursuant to Arkansas law by virtue of an "other indebtedness" clause in a trust deed (referred to by counsel for the bank as a "future advance" clause), and, therefore, its claim should be determined to be secured and its objection to the third modified plan should be sustained. First National also argues that the Debtor knew from correspondence with the bank's counsel that First National objected to treatment of its claim of $1959.49 as unsecured.

## DISCUSSION

■ Although the amount of the debt at issue is relatively small, the procedural posture of this case raises an important question as to how a Chapter 13 debtor may properly modify or eliminate a lien. The Bankruptcy Code and the Bankruptcy Rules contain different procedures used to determine whether a claim is secured, and the caselaw is sharply divided as to which is more appropriate.

2. Documentation submitted with First National's proof of claim for $1959.49 identifies the credit card issued to the Debtor as a Master Card; however, the parties consistently referred to the credit card as a Visa. The parties also refer to the claim as identified by either account number 540000226 or 5408 1673 9000 0226.

3. The Court had previously ruled against the Debtor on May 19, 2003, because of testimony that indicated First National never received notice of the second amended plan. Howev-

er, on a motion to reconsider heard by the Court on July 8, 2003, First National conceded that its previous testimony was in error and that it did receive notice. Therefore, by agreement, the matters were taken under advisement based on the record established at both hearings. The Debtor conceded that there was no basis to treat First National's secured claim of $2639.92 as unsecured and agreed to an order overruling the Debtor's objection to that claim.

## CLAIMS ALLOWANCE PROCEDURE

The Federal Rules of Bankruptcy Procedure provide that a creditor is permitted but not required to file a proof of claim. Section 502(a) of the Bankruptcy Code provides that a claim, proof of which is filed under 11 U.S.C. § 501(a), is deemed allowed unless a party in interest objects. *Manufacturer's Hanover Trust v. Bartsh (In re Flight Transp. Corp.)*, 874 F.2d 576, 583, n. 8 (8th Cir.1989); *United States v. Smith (In re Smith)*, 142 B.R. 862, 862 (Bankr.E.D.Ark.1992) (citations omitted). Federal Rule of Bankruptcy Procedure 3007 requires an objection to a claim to be in writing and notice of the objection given to the claimant at least 30 days prior to the hearing. Federal Rule of Bankruptcy Procedure 3001(f) provides that a proof of claim is prima facie evidence of the validity of a claim.

A hearing on an objection to a claim becomes an adversary proceeding if the objection includes a demand for relief of the kind specified in Federal Rule of Bankruptcy Procedure 7001. *See* Federal Rule of Bankruptcy Procedure 3007. Federal Rule of Bankruptcy Procedure 7001 requires an adversary proceeding to determine the validity, priority or extent of a lien.

Federal Rule of Bankruptcy Procedure 3012 provides:

> The court may determine the value of a claim secured by a lien on property in which the estate has an interest on motion of any party in interest and after a hearing on notice to the holder of the secured claim and any other entity as the court may direct.

Thus, an objection to claim becomes an adversary proceeding if the objection concerns the determination of the extent or validity of a lien, and the court is authorized to value the collateral to which the lien attaches.

The claims allowance procedures are applicable generally to cases filed under Chapters 7, 12, and 13, and, with some modification, to Chapter 11. These procedures can be used to determine the amount and the status of the claim as secured or unsecured.

## CONFIRMATION PROCESS

Another way to modify or eliminate a lien is through the confirmation process. Pursuant to the procedural rules regarding confirmation, a debtor may file a Chapter 13 plan with the petition. If not, the plan must be filed within 15 days thereafter. Federal Rule of Bankruptcy Procedure 3015(b).

The plan or a summary of the plan shall be included with each notice of the hearing on confirmation mailed pursuant to Federal Rule of Bankruptcy Procedure 2002 and 3015(d). The local practice requires an objection to confirmation to be filed on or before ten days after completion of the 341(a) first meeting of creditors. General Order No. 20, United States Bankruptcy Court, Eastern and Western Districts of Arkansas. The Bankruptcy Rules require only that objections be filed before the confirmation hearing. Federal Rule of Bankruptcy Procedure 3015(f). If no objection to confirmation is filed, an order confirming the plan is entered without a hearing.

In the case of modified plans, the modification itself is served on the creditor, who then has 20 days from the date of the notice of modification to file an objection to confirmation. Federal Rule of Bankruptcy Procedure 3015(g). If no objection to the modified plan is filed within the 20 days provided by Federal Rule of Bankruptcy Procedure 3015(g), the plan is confirmed without a hearing.

## EFFECT OF PLAN CONFIRMATION

The Bankruptcy Code sets out the effect of confirmation of a Chapter 13 plan. The Code provides the following:

(a) The provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan.

(b) Except as otherwise provided in the plan or in the order confirming the plan, the confirmation of a plan vests all of the property of the estate in the debtor.

(c) Except as otherwise provided in the plan or in the order confirming the plan, the property vesting in the debtor under subsection (b) of this section is free and clear of any claim or interest of any creditor provided for by the plan.

11 U.S.C. § 1327 (2000).

■ An unappealed, confirmed plan is *res judicata*, and its terms are not subject to collateral attack. 8 Collier on Bankruptcy ¶ 1327.02[1] (Alan N. Resnick & Henry J. Sommer, et al. eds., 15th ed. rev.1993). The *res judicata* doctrine applies to all issues actually litigated and any issue necessarily determined by the confirmation order. *Adair v. Sherman*, 230 F.3d 890, 894 (7th Cir.2000); *In re Harvey*, 213 F.3d 318, 323 (7th Cir.2000); *Andersen v. UNIPAC–NEBHELP (In re Andersen)*, 179 F.3d 1253, 1258–59 (10th Cir. 1999); *United States v. Richman (In re Talbot)*, 124 F.3d 1201, 1209 (10th Cir. 1997); *First Union Commercial Corp. v. Nelson, Mullins, Riley & Scarborough (In re Varat Enters.)*, 81 F.3d 1310, 1315 (4th Cir.1996); *Multnomah County v. Ivory (In re Ivory)*, 70 F.3d 73, 75 (9th Cir.1995); *In re Pence*, 905 F.2d 1107, 1110 (7th Cir.1990); *In re Szostek*, 886 F.2d 1405, 1408 (3rd Cir.1989); *Fietz v. Great Western Savs. (In re Fietz)*, 852 F.2d 455, 458–59 (9th Cir.1988); *Lawrence Tractor Co. v. Gregory (In re Gregory)*, 705 F.2d 1118, 1121 (9th Cir.1983); *IMPAC Funding Corp. v. Simpson (In re Simpson)*, 240 B.R. 559, 561 (8th Cir. BAP 1999); *In re Arctic Enters.*, 68 B.R. 71, 80 (D.Minn. 1986); 8 Collier on Bankruptcy ¶ 1327.02[1][c].

Section 1322(b)(2) of the Bankruptcy Code specifically permits a plan to "modify the rights of holders of secured claims" with some restrictions not applicable in this case. 11 U.S.C. § 1322(b)(2)(2000). The amount of a secured claim is determined in part by reference to the value of the debtor's property that secures the claim. 11 U.S.C. § 506(a)(2000).[4] The ability to modify liens by curing defaults, to re-amortize debt payments, or to strip liens, either partially or totally, is at the very heart of the confirmation process. The issues of the value of collateral and the validity of the creditor's lien, including perfection of the lien, are routinely determined at the confirmation hearing. Seldom in this jurisdiction are the validity and extent of liens determined by resorting to the claims allowance procedure. If the plan modifies the rights of a holder of a secured claim, the Court is required to determine the amount of the secured claim in the context of a hearing on confirmation. Nothing in the rules would prohibit a creditor or the debtor from using the claims allowance procedure, but a creditor must

---

4. The amount of a secured claim is determined by establishing by a preponderance of the evidence the amount of the claim and the value of the collateral securing the claim. 11 U.S.C. § 506(a) (2000). If the value of the collateral is more than the amount of the claim, the claim is fully secured. If the value of the collateral is less than the amount of the claim, the creditor has a secured claim equal to the value of the collateral and an unsecured claim for the balance. 4 Collier on Bankruptcy ¶ 506[4].

still raise the same issue and object to confirmation. Otherwise, without objection the plan will be confirmed as filed pursuant to local procedure.[5]

## DECISIONS DENYING PRECLUSIVE EFFECT TO CONFIRMED PLANS

Notwithstanding that the principles of *res judicata* generally apply to orders confirming plans of reorganization in Chapter 13, several Circuit Courts of Appeal, District Courts and Bankruptcy Courts have declined to give preclusive effect to an order confirming a Chapter 13 plan. The issue of whether it is appropriate to apply the doctrine of *res judicata* to an order confirming a plan frequently arises when a secured claim is modified or eliminated by the plan, the plan is confirmed without objection, and subsequently the same claim is allowed or deemed allowed because no timely objections to it are filed. The following cases illustrate how various courts have dealt with such situations.

The Eleventh Circuit Court of Appeals held that an order confirming a plan that modified a claim secured solely by a security interest in the debtor's principal residence in violation of 11 U.S.C. § 1322(b)(2) was not entitled to *res judicata* effect even though the creditor did not object to confirmation. *Universal Am. Mort. Co. v. Bateman (In re Bateman)*, 331 F.3d 821 (11th Cir.2003). The rationale for denying preclusive effect was that the creditor's

filing of a proof of claim was not objected to by a party in interest under Federal Rule of Bankruptcy Procedure 3007. The court also reasoned that the plan itself did not meet the mandatory requirements of 11 U.S.C. § 1322(b)(2) because it impermissibly modified the creditor's claim secured by a lien on the debtor's principal residence. The Court observed, "Bateman will not benefit from a windfall from a plan that should not have been confirmed in the first place." *In re Bateman*, 331 F.3d at 833.

The Court in *Bateman* relied on the previous decision of the Fifth Circuit, *Simmons v. Savell, (In re Simmons)*, 765 F.2d 547 (5th Cir.1985). In *Simmons*, the plan treated a creditor's claim secured by a statutory construction lien as a general unsecured claim. The creditor never objected, and the plan was confirmed. The creditor filed a secured claim, and it was never objected to. The Court refused to give *res judicata* effect to the confirmed plan. The rationale was the same as that in *Bateman*, that since the plan incorrectly provided that the creditor had no lien, the plan was not entitled to *res judicata* effect. The *Simmons* court pointed out that the debtor did not utilize the claim allowance process to object to the creditor's claim. *In re Simmons*, 765 F.2d at 556. Further, the court relied on the legal maxim that liens pass through bankruptcy unaffected. *In re Simmons*, 765 F.2d at 559.

---

**5.** This procedure is based on necessity because of the volume of cases filed and is seemingly authorized by the definition of notice and hearing in 11 U.S.C. § 102(1)(A) & (B)(i)(ii):

    (1) "after notice and a hearing," or a similar phrase—

    (A) means after such notice as is appropriate in the particular circumstances, and such opportunity for a hearing as is appropriate in the particular circumstances; but

    (B) authorizes an act without an actual hearing if such notice is given properly and if—

        (i) such a hearing is not requested timely by a party in interest; or

        (ii) there is insufficient time for a hearing to be commenced before such act must be done, and the court authorizes such act

        . . . .

Similarly, the Eleventh Circuit denied preclusive effect to a Chapter 13 plan confirmed without objection in the case of *Southtrust Bank v. Thomas (In re Thomas)*, 883 F.2d 991 (11th Cir.1989). The plan valued the creditor's secured claim at $8000.00 but made no provision for payment of the claim. The court held that the lien passed through the bankruptcy unaffected because no proof of claim was filed and the creditor's claim was not dealt with in the plan. *In re Thomas*, 888 F.2d at 998.

In a subsequent case, the Eleventh Circuit allowed an appeal on the issue of the validity of a creditor's secured claim even though there was never an appeal from the order confirming the plan that failed to provide for treatment of the creditor's claim. See *Foremost Fin. Servs. v. White (In re White)*, 908 F.2d 691 (11th Cir. 1990). The Court of Appeals reasoned that the appeal was timely because no objection to the creditor's claim had ever been filed. Further, the confirmation order did not provide adequate notice that the creditor's rights were affected such that the creditor's time to appeal would commence. In rejecting the argument that the order confirming the plan was *res judicata* on the issue, the Court stated, "This procedure [confirmation hearing] fails as a substitute for the claims objection procedure specified in Rule 3007." *In re White*, 908 F.2d at 693 (citations omitted).

In addition to *In re Simmons* cited above, the Fifth Circuit Court of Appeals has denied preclusive effect to a confirmed Chapter 13 plan in other cases. In the case of *Sun Finance Company v. Howard (In re Howard)*, 972 F.2d 639 (5th Cir. 1992), a Chapter 13 plan confirmed without objection was not *res judicata* as to the treatment of a creditor's secured claim. The Fifth Circuit relied on several bases to reach its decision. The court concluded that the creditor did not participate in the confirmation process other than to file a claim and was, therefore, protected by the principle that a secured creditor may ignore the bankruptcy proceeding and look to the lien for satisfaction of the debt. The court held that the debtor was required to file an objection to the claim and noted that the plan did not give the creditor sufficient notice.

In the case of *Boyd v. United States (In re Boyd)*, 11 F.3d 59 (5th Cir.1994), the Fifth Circuit refused to give preclusive effect to an order confirming a plan filed 33 months after a foreclosure proceeding had terminated the debtor's interest in the real property. The creditor had failed to object to the plan that dealt with the foreclosed property, and the plan was confirmed. The court ignored the explicit finding of the order of confirmation and held that the debtor had no interest in the real property in question under state law. Having no interest in the property when the bankruptcy petition was filed, the debtor could not convey the property to his estate upon filing.

In at least two cases, the Fourth Circuit Court of Appeals has refused to accord *res judicata* effect to an order confirming a Chapter 13 plan to which the creditor failed to object. In the case of *Deutchman v. Internal Revenue Service (In re Deutchman)*, 192 F.3d 457 (4th Cir.1999), the court held that a Chapter 13 plan does not properly address liens without the initiation of an adversary proceeding and without the debtor's objection to the creditor's proof of claim. The court ruled that a plan treating the claim as unsecured did not provide for the claim as required by 11 U.S.C. § 1327(c).

Similarly, in the case of *Cen–Pen Corp. v. Hanson*, 58 F.3d 89 (4th Cir.1995), the Fourth Circuit refused to give *res judicata*

effect to an order confirming a Chapter 13 plan to which the creditor failed to object. The Court stated that liens pass through bankruptcy unaffected and are not discharged because the discharge extinguishes only *in personam* but not *in rem* claims against the debtor's property. Because the debtor did not affirmatively file an adversary proceeding pursuant to Federal Rules of Bankruptcy Procedure 7001(2) and 7004, the lien remained unaffected by plan confirmation. *Hanson*, 58 F.3d at 93 (stating order of confirmation lacks preclusive effect on a matter that must be resolved by an adversary proceeding; matter requiring adversary proceeding is not actually litigated under *res judicata*.principles by plan confirmation)(quoting *In re Beard*, 112 B.R. 951, 955–56 (Bankr. N.D.Ind.1990)).

The Court in *Hanson* held that the plan did not provide for the creditor's claim, even though the plan actually did provide for it as an unsecured claim. The Court said, under section 1327(c), a plan does not "provide for" a secured claim unless it provides for payment equal to the value of the collateral. See, also, *In re Escobedo*, 28 F.3d 34, 35 (7th Cir.1994) (ruling confirmation of plan is not *res judicata* as to omitted priority claims).

## RULINGS OF BANKRUPTCY COURTS IN THE EIGHTH CIRCUIT

The decisions on this issue that have been rendered by bankruptcy courts in the Eighth Circuit are also in conflict.[6] The court in *In re Harnish* held that if the secured creditor participates by filing a proof of claim, the secured creditor's claim is provided for in the plan, and the plan does not provide a lien in the plan, then the creditor's lien is extinguished by the order confirming the plan. *In re Harnish*,

224 B.R. 91, 94–95 (Bankr.N.D.Iowa 1998). *See also In re Siemers*, 205 B.R. 583, 586 (Bankr.D.Minn.1997) (holding that confirmation of a Chapter 13 plan operates to avoid liens of all participating secured creditors provided for by the plan unless the plan states otherwise) (citations omitted).

In the same vein, the court in *In re Basham* held that a secured creditor was bound by a plan providing that the surrendering of the collateral fully satisfied the claim. *In re Basham*, 167 B.R. 903, 908 (Bankr.W.D.Mo.1994). In *Basham*, the creditor accepted the surrender of the collateral but filed a deficiency claim anyway after confirmation of the plan. Judge Koger focused much of his attention on the adequacy of the notice given to the creditor by the terms of the plan. The bankruptcy court relied on a decision of the Fourth Circuit Court of Appeals that refused to give *res judicata* effect to the order confirming the plan because the plan did not adequately notify the creditor of its plan treatment, thereby violating principles of due process of law. *In re Basham*, 167 B.R. at 907 (citing *In re Linkous*, 990 F.2d 160, 161–63 (4th Cir.1993)). Adopting the rationale in *In re Linkous*, Judge Koger concluded that *res judicata* did apply in *Basham* because the creditor had adequate notice of the plan's treatment of its claim.

In contrast, the court in *In re Stein* ruled that a secured claim survived a plan of reorganization treating the claim as partially unsecured because no one objected to the proof of claim or attempted to avoid the lien through an adversary proceeding. *In re Stein*, 63 B.R. 140, 145–46 (Bankr. D.Neb.1985). The court reasoned that the plan may not act as an objection to a claim.

---

**6.** As far as research can determine, the Eighth Circuit Court of Appeals has not ruled on this precise issue in the context of a Chapter 13 confirmed plan.

*In re Stein,* 63 B.R. at 145. This view was reaffirmed in the case of *In re Olson,* 175 B.R. 30, 32 (Bankr.D.Neb.1994). The plan in *Olson,* to which there was no objection, treated the IRS claim as an unsecured priority claim, while the IRS filed a proof of claim characterizing the debt as partially secured by a right of setoff. Because the debtor did not object to the claim, the court held the right of setoff survived the plan, notwithstanding that the plan treated the IRS claim as priority unsecured.

## THIS COURT'S RULINGS ON THE ISSUE

This Court has dealt with this issue in two cases: *Kuebler v. Commissioner (In re Kuebler),* 156 B.R. 1012 (Bankr. E.D.Ark.1993), *aff'd,* 172 B.R. 595 (E.D.Ark.1994), and *United States v. Smith (In re Smith),* 142 B.R. 862 (Bankr. E.D.Ark.1992).

*Kuebler* involved a confusing set of facts. The IRS had both a secured and unsecured claim. The original plan provided in one paragraph that "the holder of each such [secured] claim shall retain the lien securing such claim" while other provisions of the plan treated the claim as an unsecured priority claim. *In re Kuebler,* 156 B.R. at 1014. The Trustee's office reclassified the IRS claim as unsecured without notice to the IRS. Later, a modified plan was confirmed that changed the IRS' claim from $60,000.00 to $16,200 and treated this claim as an unsecured priority claim. After completion of the plan, the Court held that the plan discharged some of the priority debt because there was no objection to the plan, but held that the lien securing the discharged secured debt survived the case and remained enforceable *in rem. In re Kuebler,* 156 B.R. at 1017 (citing *Sun Fin. Co. v. Howard (In re Howard),* 972 F.2d 639 (5th Cir.1992); *Simmons v. Sa-*

*vell (In re Simmons),* 765 F.2d 547 (5th Cir.1985)).

*In re Smith* also involved a confusing set of facts including discharge issues. In *Smith,* the plan proposed to pay the priority claim in full, but stated an amount of claim that differed from the allowed amount. The Court ruled that the debtor could not use the confirmation process as a substitution for an objection to claim; therefore, the plan did not discharge certain unpaid tax claims. The Court noted that the issue at confirmation was not the amount of the claim but the claim's treatment under the plan. Both *Kuebler* and *Smith* also involved the issue of lack of notice to satisfy due process.

## SUMMARY OF JUDICIAL RATIONALES USED TO DENY PRECLUSION

It is obvious from a review of the cases cited above that courts have resorted to a variety of rationales to reach the conclusion that *res judicata* does not apply to a confirmed plan. Some courts exalt the claims resolution procedure over the confirmation process more or less arbitrarily and reason that if the alternative procedures to determine a secured claim were not utilized, *res judicata* does not apply. *See, e.g., Hanson,* 58 F.3d at 93 (finding that without adversary proceeding to determine lien status, *res judicata* does not apply to a confirmed plan).

Other courts that decline to apply *res judicata* principles appear to base their decisions, in part, on the fact that the plan provisions are so incorrect under the law that to apply *res judicata* leads to an absurd result. *See, e.g., In re Boyd,* 11 F.3d at 60 (ignoring preclusive effect of confirmed plan treating property foreclosed 33 months previously as property of the estate); *In re Bateman,* 331 F.3d at 833

(ruling "plan should not have been confirmed in the first place").[7]

Some courts have denied *res judicata* effect by relying on a strained interpretation of the requirement that a claim be properly "provided for" under section 1327(c). *See, e.g., In re Deutchman,* 192 F.3d at 461 (stating that unless the plan clearly and accurately characterizes the claim, the plan does not provide for the claim under the Code).

Another rationale used for denying the application of *res judicata* is based on the idea that a secured creditor may decline to participate in the bankruptcy process, whereupon the creditor's lien flows through the bankruptcy unaffected. *See, e.g., In re Simmons,* 765 F.2d at 556 (stating creditor with claim secured by lien may ignore bankruptcy process and look to lien for satisfaction of the debt)(quoting *In re Tarnow,* 749 F.2d 464, 465 (7th Cir. 1984)).

In his multi-volume treatise *Chapter 13 Bankruptcy,* Judge Keith Lundin examines the question of whether a confirmed plan is entitled to preclusive effect as to lien treatment by focusing on whether the creditor whose lien was treated in the plan had adequate notice to satisfy procedural due process. Judge Lundin has commented that

It would be nice if the Bankruptcy Code and Rules prescribed a unitary procedure for fixing value, determining the extent of liens, confirming plans and allowing claims, but these processes are at once separate and inextricably intertwined in a Chapter 13 case. Courts such as the Fourth Circuit that have declared bright-line rules for the ascendancy of one or another procedure immediately encounter the reality of the next case in which an awkward exception or inconsistency reveals that more is going on than just picking among procedures. These courts are asking the wrong question. The issue is not, which procedure trumps another? The issue is, did the creditor have sufficient notice of the plan and opportunity to object such that confirmation has the effects described in § 1327(a), (b) and (c)?

Procedural due process can be satisfied in several ways without violating any fundamental principles of bankruptcy law. Describing in a Chapter 13 plan the treatment of a secured claim and determining the allowed amount of a secured claim for purposes of § 506(a) inevitably involve some of the same questions of fact and law. Valuation of collateral is often at the heart of both. There is no reason under the Bankruptcy Code or Rules why the overlapping issues can't be decided in either context-during a hearing on confirmation of the plan or as part of a hearing before or after confirmation on an objection to a claim. If notice is adequate, the value of a secured claim holder's collateral can be determined on a motion in advance of confirmation under Bankruptcy Rule 3012, at the confirmation hearing as part of the trial of a contested plan, or at a hearing on an objection to the creditor's claim. The outcome of each of these procedures is the same for purposes of the effects of confirmation in § 1327—if notice was adequate and the procedural due process rights of the secured claim holder are respected, a bankruptcy court order fixing the value of collateral, de-

---

7. If a plan is proposed in an intentional attempt to catch the creditor off guard, some courts have permitted sanctions against the debtor's counsel. *See In re Lemons,* 285 B.R. 327, 333 (Bankr.W.D.Okla.2002)(sanctioning debtor's attorney for plan impermissibly discharging student loan debt through the plan).

termining the allowed amount of a secured claim or defining what the secured claim holder will receive in satisfaction of its lien rights is binding on all parties without regard to the label on the process

Keith M. Lundin, Chapter 13 Bankruptcy § 233.1 (3d ed. 2000 & Supp.2002) (footnotes omitted).[8]

### THE COURT'S DECISION

■ After examining the various reasons for denying preclusion to a confirmed plan, this Court finds that the analysis must take into account the principles that an order confirming a Chapter 13 plan is deemed final under the statute and for purposes of appeal.

■ If an order is final, then a rationale cannot be valid that subjects the order to collateral attack because it is wrong or because an alternate procedure could have been used to determine the issue. It is well settled that an order need not correctly apply the law to be given preclusive effect. *Underwriters Nat'l Assurance Co. v. North Carolina Life & Accident & Health Ins. Guar. Ass'n*, 455 U.S. 691, 716, 102 S.Ct. 1357, 71 L.Ed.2d 558 (1982) (stating that possibly erroneous finding by Indiana court was entitled to preclusive effect in subsequent proceeding in North Carolina court); *Stoll v. Gottlieb*, 305 U.S. 165, 171–72, 59 S.Ct. 134, 83 L.Ed. 104 (1938) (ruling that even if a federal court lacked jurisdiction as to guaranties dealt with in the plan, confirmation order may not be revisited by state court, absent allegation of fraud); *Republic Supply Co. v. Shoaf*, 815 F.2d 1046, 1054 (5th Cir.1987)(applying *res judicata* doctrine to deny creditor's enforcement of guaranty

extinguished, perhaps improperly, by the bankruptcy court's plan confirmation order); *Sanders v. GIAC Leasing Corp. (In re Sanders)*, 81 B.R. 496, 500 (Bankr. W.D.Ark.1987) (holding that enforcement of guaranty was precluded by *res judicata* principles implicated by confirmed chapter 11 plan releasing guarantors, even though Code prohibits discharge of non debtor obligations).

■ As discussed by Justice Blackmun in *Dewsnup v. Timm*, 502 U.S. 410, 112 S.Ct. 773, 116 L.Ed.2d 903 (1992), the concept of liens passing through bankruptcy unaffected has validity in a Chapter 7 case. However, this concept is not necessarily applicable in reorganization cases. *See, e.g., Gen. Elec. Capital Corp. v. Dial Bus. Forms, Inc. (In re Dial Bus. Forms, Inc.)*, 341 F.3d 738, 743 (8th Cir.2003) ("a plan of reorganization can expressly ... abrogate ... liens ... and this is common.... [T]he principle that liens pass through bankruptcy unaffected cannot be taken literally")(quoting *In re Penrod*, 50 F.3d 459, 462 (7th Cir.1995)). A Chapter 13 plan has specific statutory authority to cure a default on a secured loan, modify the due date and amount of payments, and even eliminate a secured claim. *See* 11 U.S.C. § 1322(b)(2000)(providing that plan may modify the rights of holders of secured claims and cure or waive default). *See also United Carolina Bank v. Hall*, 993 F.2d 1126 (4th Cir.1993)(plan modifying installment payments on loan secured by mobile home). *Cf. First Nat'l Bank v. Allen*, 118 F.3d 1289, 1293 (8th Cir.1997) (chapter 12 plan eliminating claims); *Harmon v. United States*, 101 F.3d 574 (8th Cir.1996) (chapter 12 plan extinguishing

---

**8.** *See also* Eric S. Richards, "Due Process Limitations on the Modifications of Liens through Bankruptcy Reorganizations" 71 Am. Bankr.L.J. 43, 44 (Winter 1997) (proposing that principles of due process are essential to a proper analysis of the procedural issues involved in lien modification through bankruptcy reorganization).

lien by payment of secured claim and required payments on unsecured claim).

■ To deny preclusive effect to a confirmation order invites the chaos reflected in the cases. Whether a claim is to be treated as secured is necessarily decided within the confirmation process and will sometimes require a determination of the amount of the claim if the issue is whether the claim is undersecured.[9] If a creditor fails to object to treatment of its claim in the plan, the creditor will suffer the consequences. *See Universal Suppliers, Inc. v. Regional Bldg. Sys., Inc. (In re Regional Bldg. Sys. Inc.),* 254 F.3d 528, 533 (4th Cir.2001) (stating that chapter 11 confirmation order did not preserve lien of creditor who did not object and "fell asleep at the switch"); *In re Penrod,* 50 F.3d 459 (7th Cir.1995)(holding that if chapter 11 confirmation order did not preserve the lien, lien was extinguished if creditor participated in the process of reorganization).

■ The principles of *res judicata* should be applied except in cases where the notice to the creditor of the plan treatment of the lien is so insufficient that it violates due process of law. *See, e.g., In re Linkous,* 990 F.2d at 162 (providing that notice of confirmation hearing was inadequate to satisfy due process); *In re Rheaume,* 296 B.R. 313, 320–22 (Bankr.D.Vt. 2003) (ruling plan providing early lien release was "relief through ambush" because plan lacked sufficient notice of the provision); *In re Basham,* 167 B.R. at 908 (holding creditor had sufficient notice of Chapter 13 plan providing for surrender of collateral in full satisfaction of debt). *Cf.*

*In re Ruehle,* 296 B.R. 146, 164 (Bankr. N.D.Ohio 2003) (concluding debtor could not discharge student loan through plan provision where creditor did not have adequate notice that plan discharged the debt).

Pursuant to this analysis, the Court concludes that the Debtor's objection to the secured status of First National's claim of $1959.49 (account number 540000226 or 5408 1673 9000 0226) is sustained and that the Debtor's objection to First National's claim for $2639.92 (account number 107053) is overruled by agreement.

First National's objection to confirmation of the third modified plan is sustained by agreement as to the secured status and amount of First National's claim for $2639.92. First National's objection to confirmation of plan is also sustained as to the amount of the $1959.49 claim. However, the Court overrules First National's objection as to the plan's characterization of the claim of $1959.49 as unsecured. First National had specific notice of the Debtor's intention to treat its claim as unsecured because First National was served with a copy of the second amended plan, and the proposed treatment of the claim for $1959.49 is unambiguously stated as unsecured. First National did not object to the plan. When the second amended plan was confirmed, the order became final, and First National is now precluded from challenging it on the merits because of the principles of *res judicata.* Therefore, First National has a secured claim

---

9. If there is no issue as to the validity of the secured claim because the value of the collateral is sufficient to secure the claim totally, the issue of the amount of the claim would be determined under the claims allowance process because the amount owing under these circumstances is not an issue necessarily determined by the order of confirmation. 8

Collier on Bankruptcy ¶ 1327.02[2]. An attempt to reduce the amount of a claim for an arrearage by stating an amount in the plan less than the amount of the allowed claim was held to violate due process because the claim allowance procedure was not used to reduce the amount of the claim. *In re Hobdy,* 130 B.R. 318, 321 (9th Cir. BAP 1991).

for $2639.92 and an unsecured claim for $1959.49.

IT IS SO ORDERED.