In re Cheryl SEARCY, Debtor.

No. 90–16657–WCH.

United States Bankruptcy Court,
D. Massachusetts.

Dec. 1, 2005.

Jeffrey J. Cymrot, Sassoon & Cymrot LLP, Boston, MA, for debtor.

David M. Rosen, Harmon Law Offices PC, Newton, MA, for mortgagee.

### DECISION ON MOTIONS TO COMPEL DISCHARGE OF MORTGAGE AND HOLD MORTGAGEE IN CONTEMPT

WILLIAM C. HILLMAN, Bankruptcy Judge.

After reopening her 15–year–old Chapter 13 case, Cheryl Searcy ("Debtor") moved to compel USAlliance Federal Credit Union ("USAlliance"), successor to Progressive Consumer Federal Credit Union ("Progressive") to discharge a mortgage originally granted by Debtor to Progressive[1] and to hold USAlliance in contempt of Debtor's discharge order for its failure to discharge the mortgage contending that any liability to USAlliance had been discharged by the confirmation of her Chapter 13 plan.[2] USAlliance objected, asserting that the confirmed plan modified, but did not discharge, the mortgage debt. After argument, I took the motions under advisement. For the reasons set forth below, I will grant the motion seeking to require USAlliance to discharge the mortgage and deny the contempt motion.

### Facts

The facts involved in this dispute are agreed. Debtor filed her petition[3] and plan[4] under Chapter 13 on November 13, 1990. With her plan she filed the "Debtor's Statement," as was then the practice in this Court, which described assets, liens thereon, and the Debtor's monthly income and expenses. Her plan, as relevant here, listed the classification and treatment of creditors.

In the asset section of the Debtor's Statement, Debtor declared the ownership of two parcels of real estate. She valued

---

1. Docket No. 31.

2. Docket No. 32.

3. Docket No. 1.

4. Docket No. 4.

Parcel 1, at 35 Devon St., Dorchester, Massachusetts at $150,000. This parcel was Debtor's residence. It was subject to a first mortgage to "First Trade S.B." in the amount of $70,000.00. The mortgagee filed a proof of claim for $3,334.75, which Debtor listed as $2,200.00 in her plan, which appears to be the amount of the pre-petition arrears on that mortgage.[5] The plan also disclosed a second lienholder, Progressive, due "$50,000.00* ". The asterisk related to the footnote described below.

Debtor valued Parcel 2, at 25 Bradford St., Mattapan, Massachusetts, at $200,000.00 and scheduled a first mortgage to Progressive in the amount of "$200,-000.00* " and a second mortgage to Stuart Schrier and Kathleen Fitzgerald (collectively "Schrier") for $30,000. This was a rental property.

The footnote to which we are referred by the asterisks indicates that the mortgage was a single obligation: "NOTE: $250,000.00 OBLIGATION COVERING BOTH PARCELS, PARCEL 2 TO BE FORECLOSED. BALANCE DUE PROGRESSIVE ON PARCEL 1 DISPUTED." [6]

Turning to the Plan, Debtor described Progressive as the holder of a fully secured claim in the amount of $50,000.00 on Parcel 1 with payments not in arrears. Progressive was the only claim in that class.[7] While the form language next provides that "each claim in this subclass shall receive its regular payments as per the security agreement," that language is fol-lowed immediately by: " * PROGRESSIVE CONSUMER FEDERAL CREDIT UNION SHALL RECEIVE ITS PAYMENTS BASED ON A 5 YR. NOT [sic] WITH A 25 YR. AMORTIZATION 2CHEDULE [sic] OR $454.50/MONTH." The payment summary indicates a "total monthly current payment as per security agreements to be paid through Trustee (PROGRESSIVE 2ND MORTGAGE)" OF $454.50. The mathematics indicate that 60 payments of $454.50 would total $27,270.00.

Under the heading of secured claims with payments in arrears Debtor recites that "Debtor intends to return security, namely 25 BRADFORD ST., MATTA-PAN. Payments to be made by return of the collateral and by treating the deficiency of $30,000 as unsecured claim. See Class 5(2)(b)." The $30,000.00 refers to the Schrier mortgage.

Class (5)(2)(b) provides for a payment of 10% to $42,516.58 in unsecured creditors. Schedule A–3 of the plan, listing unsecured creditors, ties in to that dollar amount and lists Schrier as a creditor with an unsecured claim of $30,000.00. The plan does not provide for any portion of the indebtedness to Progressive as an unsecured claim.

An order confirming the plan was entered on April 19, 1991.[8] It recites the provision for $27,270.00 in payments to Progressive as noted above, and, in an asterisked "further provision" notes

---

5. The Trustee's account indicates that he paid the first mortgagee $75.48 against a claim allowed of $556.60, leaving a balance due of $481.12.

6. This is the only reference to the Progressive claim as disputed. In any event, Progressive did not object to its treatment under the plan.

7. The plan probably provided that the first mortgagee would be paid outside of the plan although it is unclear. The reference to payments outside of the plan gives an incorrect reference back to the Progressive mortgage but that does not make sense; the regular payments under the first mortgage must have been intended.

8. Docket No. 7.

There is a blanket mortgage on the residential Real Estate and the property on 25 Bradford Street. The property on Bradford will be be [sic] abandoned by the debtor. The anticipated deficiency will be $50,000.00. The only amount provided for through the plan will be $27,270.00 (60 × $454.50).

The unsecured figure of $42,516.00 includes the 2nd mortgagee's (Stuart Schrier, Esq.) claim of $37,206.00 to be paid at the unsecured dividend of 10%.

Progressive filed a motion to lift stay on June 13, 1991.[9] The motion sought relief to continue a pending foreclosure on the Bradford Street property. Debtor filed her assent to the motion on June 26, 1991.[10] The record does not indicate what happened to the property thereafter.

On June 24, 1991, Progressive filed a proof of claim[11] asserting a secured claim of $264,548.33. A copy of a mortgage dated June 29, 1988 in the amount of $200,000.00, executed by Peter J. Garrity and Cheryl Searcy was attached. The two parcels described in the mortgage appear to be those described above. Debtor did not object to the proof of claim.

On August 26, 1996, the Trustee filed the Trustee's Final Report and Account which indicates that $27,270.00, the total of the scheduled plan payments to Progressive, had in fact been paid.[12] The same document has a blank in the "balance due" column. The account was approved[13] and Debtor's discharge was ordered on September 5, 1996.[14]

Progressive and USAlliance made no effort to collect additional sums from Debtor after the case was closed on September 26, 1996.[15]

## Positions of the Parties

Debtor claims that the provisions of the confirmed plan, to which Progressive did not object, bind USAlliance, and further that laches should be applied to it since it took no action to collect further sums during the nine years since the case was closed.[16]

USAlliance responds that the terms of the plan and the confirmation order quoted above do not provide that the plan payments would be the total received by Progressive, especially since the claim was stated to be $50,000.00.[17] As to laches, it asserts that

> the fact that Progressive chose not to assert its rights to seek [relief] from stay or to collect on the balance due does not mean that its debt is extinguished. For whatever reason, Progressive and USAlliance chose to let its mortgage sit on the property. The mortgage remains valid because it secures an outstanding debt.[18]

9.  Docket No. 11.

10.  Docket No. 13.

11.  Claims Register No. 14.

12.  The name of the payee is given as "IAG FED CR UNION", which I take to be some interim holder of the mortgage.

13.  Endorsement Order dated August 28, 1996.

14.  Docket No. 27.

15.  Motion for an Order Compelling Discharge of Mortgage, Docket No. 31 (the "Motion"), ¶ 13; Objection to Motion for an Order Compelling Discharge of Mortgage, Docket No. 41 (the "Discharge Objection"), unnumbered third page, second full paragraph.

16.  Motion, ¶ 13.

17.  Discharge Objection, unnumbered second page, second and third paragraphs.

18.  Discharge Objection, unnumbered third page, second full paragraph.

## Discussion

### Binding Effect of the Plan

■ The Bankruptcy Code contains two provisions which appear to be conflicting as applied to the facts of this case. Section 502(a) dictates that a filed proof of claim is deemed allowed unless a party in interest objects. On the other hand, § 1322(b)(2) provides that a Chapter 13 plan may modify the rights of holders of secured claims.[19] The effect of a plan modification is detailed in § 1327:

(a) The provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan.

(b) Except as otherwise provided in the plan or the order confirming the plan, the confirmation of a plan vests all of the property of the estate in the debtor.

(c) Except as otherwise provided in the plan or in the order confirming the plan, the property vesting in the debtor under subsection (b) of this section is free and clear of any claim or interest of any creditor provided for by the plan.[20]

The manner in which these sections are to be applied is the subject of conflicting decisions, although the decisions are not numerous.

*In re Pence*[21] involved a secured claim which was collateralized both by the debtor's home and by a business property. There is no indication in the opinion that Pacesetter, the creditor, had filed a claim. The plan provided that the creditor would receive the business property, purportedly having a value in excess of the total indebtedness, and in exchange would release its mortgage on the debtor's home. The creditor did not object to the plan but subsequently, when it discovered that the value of the business property was less than the amount owed to it, sought to revoke the confirmation of the plan and to obtain relief from stay to foreclose.

The Seventh Circuit appears to have assumed *sub silentio* that a Chapter 13 plan could modify the rights of a secured creditor in appropriate circumstances. It explained that

In the cases where the courts have allowed a lien to survive bankruptcy proceedings despite provisions in a reorganization plan to the contrary, the plan did not allow for any payment of the secured claim—typically where the secured creditor did not file a proof of claim and the plan provided only for the payment of "allowed secured claims." ... It is a very different matter where the plan treats the secured claim in a fair and equitable manner, providing for full payment of the debt.... Under 11 U.S.C. § 1327(a), Pacesetter [the creditor] is bound by the provisions of Mrs. Pence's chapter 13 plan because that plan provides for full payment of Pacesetter's claim in exchange for a release of the lien on her personal residence.

Next in time is the *Howard* decision.[22] The creditor did file a proof of claim to which the debtor did not object. The debtor's plan described the creditor's secured claim as disputed and proposed to pay the creditor $500 in full compromise of

---

**19.** 11 U.S.C. § 1322(b)(2). The exception to this rule is not applicable here, as there was collateral in addition to Debtor's principal residence.

**20.** 11 U.S.C. § 1327.

**21.** 905 F.2d 1107 (7th Cir.1990).

**22.** *Sun Finance Co. v. Howard (In re Howard)*, 972 F.2d 639 (5th Cir.1992).

its claim. However, the creditor was never served with a copy of the plan. The Fifth Circuit recognized that § 1327(a) "gives a Chapter 13 reorganization plan a sweeping binding effect on all creditors"[23] but held that "a secured creditor may remain outside the bankruptcy proceedings until an interested party objects to his allowed secured claim."[24] It explained:

> We hold that only a debtor who wishes to challenge the amount of a secured claim either by asserting a counterclaim or offset against it or by disputing the amount or validity of the lien must file an objection to the creditors' claim in order to put the creditor on notice that it must participate in the bankruptcy proceedings. A Chapter 13 plan may by its very nature change the terms of payment and otherwise modify the terms of the debt underlying the lien. Creditors are put on notice of the possibility of these types of modifications by notice of the filing of a Chapter 13 proceeding and must object to the confirmation of a plan in order to prevent their effect.…

> We do not believe that requiring a Chapter 13 debtor to file an objection to a secured claim before reducing the amount of the claim represents a substantial additional burden on the ability of debtors to obtain a fresh start.[25]

Finally, in *Linkous*,[26] the debtor's plan divided the creditor's undersecured loans into secured and unsecured elements pursuant to 11 U.S.C. § 506(a).[27] While the creditor did receive a summary of the plan, it did not object to the plan. After confirmation, the creditor filed a proof of claim and moved to revoke the order of confirmation. The Fourth Circuit held that constitutionally adequate notice had not been given as no specific notice that a § 506(a) valuation would be attempted was contained in the notice of the confirmation hearing:[28]

> [A] bankruptcy court confirmation order generally is treated as *res judicata*. However, we cannot defer to such an order on *res judicata* grounds if it would result in a denial of due process in violation of the Fifth Amendment of the United States Constitution.[29]

The case was remanded for a valuation hearing on adequate notice to the creditor. There is no mention of the effect of the filing of the proof of claim and no indication that the debtor had filed an objection thereto.[30]

In *Curtis*[31] Judge Boroff specifically held that a secured claim may be modified through a Chapter 13 plan "and no further notice, procedure or hearing is re-

---

**23.** *Id.* at 640.

**24.** *Id.* at 642.

**25.** *Ibid.*

**26.** *Piedmont Trust Bank v. Linkous (In re Linkous)*, 990 F.2d 160 (4th Cir.1993).

**27.** "An allowed claim of a creditor secured by a lien on property in which the estate has an interest … is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property … and is an unsecured claim to the extent that the value of such creditor's interest … is less than the amount of such allowed claim." 11 U.S.C. § 506(a).

**28.** 990 F.2d at 164.

**29.** 990 F.2d at 162.

**30.** Chief Judge Koger analyzed the three circuit court decisions and opted for the views espoused in *Linkous*, which he described as "the middle-of-the-road approach." *In re Basham*, 167 B.R. 903, 906 (Bankr.W.D.Mo. 1994).

**31.** *Curtis v. LaSalle Nat'l Bank (In re Curtis)*, 322 B.R. 470 (Bankr.D.Mass.2005).

quired." [32] The decision specifically addresses the notice issues involved in *Linkous* and finds that the creditor received adequate notice of the plan provisions.[33]

I reject *Howard* and adopt *Curtis* as I believe that provisions in an *adequately noticed* Chapter 13 plan which modify the rights of a secured creditor are the functional equivalent of a claims objection under § 502(a). It does not matter, substantively, which route the debtor takes so long as the creditor is informed of the itinerary and has an adequate opportunity to respond either by defending its proof of claim or by pressing an objection to the plan.[34] As a result, Debtor's failure to object to Progressive's proof of claim may be disregarded.

Having come to that conclusion, it is necessary to consider whether the plan provisions here were adequately noticed and effectively modified the secured claim by reducing it to payments to be made under the plan. USAlliance has not raised any question concerning the adequacy of notice to it and I consider that point waived.

■ Cleaning up the typographical errors, there are two provisions, one in the plan itself and one in the order of confirmation which are relevant to this issue. The plan provides that Progressive has a $50,000.00 fully secured claim on Parcel 1 and "shall receive its payments based on a 5 yr. note and with a 25 yr. amortization schedule or $454.50/month." The order of

confirmation recited that Parcel 2 would be abandoned (Debtor assented to relief from stay) and that "the anticipated deficiency will be $50,000." It further provided that "the only amount provided for through the plan will be $27,270.00 (60 × $454.50)."

These provisions are confusing at best. Since Debtor valued Parcel 1 at $150,000.00 with a first mortgage of only $70,000.00, there was sufficient value to support payment of Progressive's estimated deficiency claim in full. For whatever reason, this was not done. A reasonable reading of the plan and confirmation order provisions is that Progressive was to receive Parcel 2 plus $50,000.00 attributable to its deficiency, and that amount was to be paid on a 25 year amortization schedule with a 5 year maturity. Unlike *Pence*, where the plan provided that the treatment of the secured claim was payment in full, the language here leaves the issue in doubt. Indeed, what would be the purpose of declaring a 25–year amortization schedule if a total payment of $27,270.00 had been intended? Much simpler language would have sufficed. I hold that the plan and confirmation order do not provide that the secured creditor would only receive the plan payments, and that the balance of the $50,000.00 claim remained outstanding at the time that Debtor's case was closed.

**Laches**

■ In the nine years since Debtor received her discharge she has made no

---

**32.** *Id.* at 481. *See also Factors Funding Co. v. Fili (In re Fili)*, 257 B.R. 370 (1st Cir. BAP 2001).

**33.** In *Curtis* not only did the secured creditor file a proof of claim—the debtor objected to the proof and the objection was sustained. *Id.* at 475.

**34.** *To the same effect, In re Ramey*, 301 B.R. 534 (Bankr.E.D.Ark.2003); *In re Holmes*, 225

B.R. 789 (Bankr.D.Colo.1998); *Lee Servicing Co. v. Wolf (In re Wolf)*, 162 B.R. 98 (Bankr. D.N.J.1993). This is a parallel to the rule in this Circuit that permits challenge of a claimed exemption in defense of a § 522(f) lien avoidance motion even though the time for objecting to the exemption has expired. *Premier Capital, Inc. v. DeCarolis (In re DeCarolis)*, 259 B.R. 467, 471 n. 8 (1st Cir. BAP 2001).

payments to USAlliance or its predecessors. Over that period, USAlliance admits that it has made no effort to collect any sums from Debtor.[35] Debtor cries "laches." USAlliance asserts its right to sleep on its rights since the mortgage secures a debt and remains valid.

> Laches is a negative equitable remedy, closely related in its nature and objective with estoppel, which deprives one of some right or remedy to which he would otherwise be entitled, because his delay in seeking it has operated to the prejudice of another.... Being, like all other equitable relief, purely protective, it is not to be inferred from delay alone, but rather from the consequences which may under the circumstances flow from it. It is not a mere matter of lapse of time, but a "change of situation during neglectful repose," "an inequity founded upon some change in the condition or relations of property or parties." The adverse party must be "lulled not doing what he would not have done or omitting to do that which he would have done." There must be a delay that "works a disadvantage to another." [36]

The treatise language is consistent with ancient Massachusetts law which sanctions the application of laches to mortgages:

> A question has been sometimes raised, whether the doctrine of presumption arising from the lapse of time and total neglect to take any measure to enforce a claim, could properly be applied to the case of a mortgagee of real estate; and in some of the earlier English cases the doctrine was advanced that the common law presumption applicable to bonds, judgments, & c. arising from a delay of twenty years to enforce the same, did not apply in the case of a mortgage.... But this doctrine was repudiated ... in very strong language; and the cases of debts secured by mortgages are placed on the same footing with other demands, and held liable to be defeated by the same presumptions, arising from lapse of time and laches of the mortgagee.[37]

It remains to determine if laches applies on the facts before me, if there was not merely delay but "delay that works disadvantage to another." [38]

■ Common sense, based upon more than two score years representing creditors and on the bench, tells me that, upon the confirmation of and completion of payments under Debtor's plan, neither Debtor nor the then holder of the mortgage thought that further payments would be forthcoming.[39] It was only when Debtor sought a mortgage discharge, almost a decade later, that USAlliance woke up to the fact that it might have rights, based upon the unquestionably defective language of the plan.

The monthly payment of $454.50 for 25 years can be calculated to include an interest rate of 10% per annum, although this is

---

**35.** Objection to Motion for an Order Finding USAlliance in Contempt, Docket No. 40 (the "Contempt Objection"), first page, first paragraph.

**36.** 2 Fred F. Lawrence, Equity Jurisprudence 1121–1122 (1929) (footnotes omitted).

**37.** *Howland v. Shurtleff,* 43 Mass. (2 Met.) 26, 27 (1840) (citations omitted).

**38.** *Three Sons, Inc. v. Phoenix Ins. Co.,* 357 Mass. 271, 278, 257 N.E.2d 774 (1970).

**39.** "Common sense, just briefly, folks, is something that you don't get by getting three Ph.D.s and become this and become that. That's something we learn from the day that we're born from our mother and father, and as we go through life." Judge Connolly of the Massachusetts Superior Court Department, *quoted in Commonwealth v. Whitney,* 63 Mass. App.Ct. 351, 357–358, 826 N.E.2d 219 (2005).

no where found in the plan. The monthly payment amount barely covers interest in the initial months and after 60 months the principal balance due would still be $47,462.50. Had the mortgagee insisted on payment in full at the maturity of the plan, Debtor could have sought to amend her plan to demonstrate that the scheduled payments were intended to be in full satisfaction of the claim.[40] Since the mortgagee did not press for payment, Debtor's present obligation would be about $90,000.00 with nine years of simple interest added or about $116,300.00 if interest on the unpaid balance were compounded monthly. This is certainly a delay that works to the disadvantage of the Debtor. Laches prohibits the collection of any further payment by USAlliance.

### Sanctions

I have held that USAlliance was not barred from claiming additional amounts due from Debtor by the language of the plan or the order of confirmation. As a result I deny the motion seeking sanctions for violation of the discharge injunction. However, since I hold that USAlliance is barred by laches for collecting any further sum from Debtor, I shall grant the motion seeking to require USAlliance to discharge the mortgage and shall issue an order directing it to provide Debtor with a discharge of the mortgage in recordable form forthwith.

---

40. I should note that counsel who prepared the plan is not Debtor's present counsel.